540 A.2d 815

The ARUNDEL CORPORATION

v.

James F. GREEN, et al.

No. 1011, Sept. Term, 1987.

Court of Special Appeals of Maryland.

May 5, 1988.

Benjamin Rosenberg (Rosenberg, Proutt, Funk & Greenberg, Robert G. Smith, W. Warren Hamel and Venable, Baetjer & Howard, on the brief), Baltimore, for appellant.

Edward Greensfelder, Jr., Washington, D.C. (John Philip Miller and Kaplan, Heyman, Greenberg, Engelman & Belgrad, P.A., on the brief), Baltimore, for appellees.

Argued Before WEANT\*, KARWACKI and WENNER, JJ.

KARWACKI, Judge.

This case concerns the limits of the absolute privilege accorded an attorney to publish defamatory matter about another in connection with a judicial proceeding. We must determine the applicability of that privilege to a communica-

---

\* Weant, J., participated in the hearing and conference of this case but retired before the adoption of this opinion.

tion made prior to the institution of judicial proceedings by the attorney who published it.

The Arundel Corporation (Arundel) appeals from a summary judgment rendered against it by the Circuit Court for Baltimore City. That judgment terminated the action which Arundel had instituted to recover damages for alleged defamation from James F. Green, Esq., a member of the Bar, and Ashcraft and Gerel, a law firm in which Mr. Green is a partner. The record reveals that the following undisputed material facts were before the hearing court when it entered the summary judgment in appellees' favor.

Arundel is a Maryland Corporation which is engaged in the production and sale of ready-mix concrete, sand, gravel and crushed stone. One of its crushed stone products is marketed under the trade name of Delight Stone. On November 6, 1986, Green sent letters prepared on his firm's stationery to various customers of Arundel. Each of the letters contained the following identical text:

Please be advised that this law firm has been retained by certain individuals to proceed on their behalf in securing legal remedies for personal injuries allegedly sustained by their exposure to various toxic materials during the course of their occupations. We are writing to you as part of our investigation regarding these workers and their exposure to asbestos bearing crushed stone aggregate.

According to information supplied to us, these workers were exposed to, among other things, dust from crushed stone aggregate supplied by Rockville Crushed Stone, Inc. and/or The Arundel Corporation's Delight Stone. Please find attached Material Safety Data Sheets prepared by Rockville Crushed Stone, Inc. and The Arundel Corporation. It is our understanding that your business may have been a recipient of crushed stone aggregate mined and/or distributed by Rockville Crushed Stone, Inc. and/or Delight Stone. We would respectfully request if you could advise us as to whether or not these companies put you on notice of any potential health hazards result-

ing from exposure to their asbestos bearing crushed stone aggregate. For example, were you or your employees given precautionary instructions or warnings in the handling and use of their asbestos bearing crushed stone aggregate.

If you believe that you can be of help to our investigation in this matter, it would be appreciated if you would contact Mr. Antonios Heper in the Baltimore Office of our firm. We are most interested in securing sworn testimony, either through deposition or written statement, concerning any knowledge you might have regarding the above.

Thank you for your consideration of our investigative request.

A copy of one of the letters that Mr. Green mailed was sent to appellant. Appellant's attorney was consulted concerning the letter, and on November 14, 1986, wrote to Mr. Green:

I am writing on behalf of the Arundel Corporation in response to a letter Arundel recently received from you. The letter appears to be a form letter sent by you to some of Arundel's crushed stone customers, but Arundel also received a copy.

The letter implies, but does not state, that you represent workers who allege that occupational exposure to asbestos from Arundel's stone caused them personal injury. Arundel is unaware of a single instance in which *anyone* suffered *any* adverse health effect due to asbestos from Arundel's stone. If you have any evidence or information to the contrary, we would appreciate your bringing it to our attention at once.

Arundel has received test results of analyses of its stone from independent laboratories. The amount of asbestos in the stone is so small that no special handling precautions or protective equipment are warranted. The risk due to asbestos in the stone is so small that it approaches zero.

Your letter appears to be nothing more than an attempt to undermine and interfere with the very valuable business relationship and good will which Arundel has developed with its customers over years of doing business. Arundel will resist such attempts by whatever legal means are available to it.

It may be that your clients have misled you into thinking that there is some connection between Arundel's stone and their alleged injuries. I strongly suggest that you inquire further into the matter before sending any more letters.

When Green did not respond to that letter, appellant filed suit on February 13, 1987.

Responding to appellant's complaint, appellees pleaded *inter alia* that they enjoyed an absolute privilege from the defamation action. They asserted that when Green wrote the letter of November 6, 1986, he was acting as an attorney whose firm was contemplating the institution of judicial proceedings against Arundel on behalf of a client or clients and that the letter was related to that anticipated litigation. Appellant took Green's deposition on March 27, 1987. At that deposition, Green refused to disclose the names or number of clients on whose behalf he wrote the letter of November 6, 1986, with one exception. He identified Linwood Cherry of Baltimore County as one of those clients, and in response to a Rule 2–422 motion for production of documents previously filed by the appellant, Green produced a copy of a complaint which his firm had filed after November 6, 1986, in the Circuit Court for Baltimore City on behalf of Mr. Cherry. In that complaint Cherry sought damages from multiple parties who allegedly had supplied asbestos products to Cherry's employers after 1956. Cherry alleged that he contracted asbestosis as a result of his exposure to those products at his work places. He named Bethlehem Steel Company as his employer from 1956 to 1958 and Arundel as his employer from 1961 to 1969 and from 1972 until the present time. Arundel was not named

as a defendant in Cherry's complaint, and there was no allegation that any product manufactured or supplied by Arundel caused his asbestosis.

When the appellees moved for summary judgment on March 17, 1987, Green attached the following affidavit to that motion:

1. I am a defendant in this case and a partner in the defendant law firm of Ashcraft & Gerel.

2. Prior to the time the attached letter of November 6, 1986 was sent to some of plaintiff Arundel's customers, several persons had retained Ashcraft & Gerel to pursue on their behalf legal remedies for personal injuries allegedly sustained by them because of exposure to asbestos contained within stone materials mined, crushed and sold by Arundel.

3. The November 6, 1986 letter was written to investigate whether or not Arundel had issued any warnings about the potential health hazards resulting from exposure to their asbestos-bearing stone materials.

4. At the time the letter was written, Ashcraft & Gerel was contemplating in good faith and seriously considering pursuing litigation against Arundel.

Appellees' motion for summary judgment was based solely on their asserted absolute privilege to defame. For purposes of their motion the appellees conceded that Arundel was defamed by the contents of the November 6, 1986 letter, that the implication contained therein as to the dangerous nature of Arundel's Delight Stone was false, and that such false implication was published by Green with knowledge of its falsity or with reckless disregard for the truth. The court granted appellees' motion on the ground that the record before it established as a matter of law that appellees were absolutely privileged to defame Arundel.

Since *Maulsby v. Reifsnider*, 69 Md. 143, 14 A. 505 (1888), the Court of Appeals has recognized an absolute privilege

for defamatory matter published by an attorney in the course of a judicial proceeding in which he is engaged. This privilege, however, has always been limited to relevant statements, i.e., the attorney who asserts the privilege as a defense to an action by the defamed party bears the burden of proving that the published statements have some relation to the judicial proceeding he was pursuing. *Gersh v. Ambrose*, 291 Md. 188, 191–92, 434 A.2d 547 (1981); *Korb v. Kowaleviocz*, 285 Md. 699, 701–03, 402 A.2d 897 (1979); *Kennedy v. Cannon*, 229 Md. 92, 182 A.2d 54 (1962). Thus, in *Kennedy* an attorney who made a statement to the press defaming a witness in a pending criminal proceeding in which the attorney was engaged as defense counsel was not entitled to assert the privileged nature of the publication when he was sued by the defamed witness where he was unable to demonstrate that his statement bore any relation to the criminal proceeding.

No Maryland appellate court, however, has been presented with the question of whether the attorney's privilege extends to communications made prior to the institution of the judicial proceeding he contemplates filing on behalf of a client. That issue is squarely presented in the instant case. Courts in other jurisdictions have disagreed on its resolution. *Sriberg v. Raymond*, 370 Mass. 105, 345 N.E.2d 882 (1976), is representative of the view that an attorney's communication made in the course of preparing for the institution of a judicial proceeding which is contemplated in good faith should be accorded an absolute privilege from a defamation action. *Timmis v. Bennett*, 352 Mich. 355, 89 N.W.2d 748 (1958), is to the contrary, holding that the attorney's privilege is inapplicable to communications made in preparation for litigation, even if anticipated in good faith. The cases are collected in Annotation, 23 ALR 4th 932.

Section 586 of the *Restatement, Torts*, 2d adopts the first approach:

An attorney at law is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding.

Comments a. and e. under that Section explain:

a. The privilege stated in this Section is based upon a public policy of securing to attorneys as officers of the court the utmost freedom in their efforts to secure justice for their clients. Therefore the privilege is absolute. It protects the attorney from liability in an action for defamation irrespective of his purpose in publishing the defamatory matter, his belief in its truth, or even his knowledge of its falsity. These matters are of importance only in determining the amenability of the attorney to the disciplinary power of the court of which he is an officer. The publication of defamatory matter by an attorney is protected not only when made in the institution of the proceedings or in the conduct of litigation before a judicial tribunal, but in conferences and other communications preliminary to the proceeding.

e. As to communications preliminary to a proposed judicial proceeding the rule stated in this Section applies only when the communication has some relation to a proceeding that is contemplated in good faith and under serious consideration. The bare possibility that the proceeding might be instituted is not to be used as a cloak to provide immunity for defamation when the possibility is not seriously considered.

We find the Restatement position persuasive. It promotes the longstanding policy in this State of extending the absolute privilege to attorneys engaged in judicial proceedings because otherwise they might be deterred in their role in the judicial process by the fear of suits for defamation. It also recognizes the importance of the attorney's func-

tions prior to commencement of a suit on behalf of a client. Investigation and evaluation of facts upon which the anticipated litigation is to be based are an essential part of the attorney's duties to his or her client and to the court.[1] We therefore hold that the fact that the letter in the case *sub judice* was published prior to the commencement of a contemplated judicial proceeding did not disqualify the appellees from asserting their attorney's privilege in Arundel's action for defamation.

As we have already noted, the attorney who publishes defamatory matter in connection with litigation which is contemplated is entitled to an absolute privilege from action thereon only if the attorney can establish that the matter published has some relation to the anticipated proceeding. Whether the attorney has met his burden of proving the

---

1. Rule 1–311 provides:

   **SIGNING OF PLEADINGS AND OTHER PAPERS**

   (a) **Requirement.**—Every pleading and paper of a party represented by an attorney shall be signed by at least one attorney who has been admitted to practice law in this State and who complies with Rule 1–312. Every pleading and paper of a party who is not represented by an attorney shall be signed by the party. Every pleading or paper filed shall contain the address and telephone number of the person by whom it is signed.

   (b) **Effect of Signature.**—The signature of an attorney on a pleading or paper constitutes a certification that the attorney has read the pleading or paper; that to the best of the attorney's knowledge, information, and belief there is good ground to support it; and that it is not interposed for improper purpose or delay.

   (c) **Sanctions.**—If a pleading or paper is not signed as required (except inadvertent omission to sign, if promptly corrected) or is signed with intent to defeat the purpose of this Rule, it may be stricken and the action may proceed as though the pleading had not been filed. For a wilful violation of this Rule, an attorney is subject to appropriate disciplinary action.

   Rule 1–341 provides:

   **BAD FAITH—UNJUSTIFIED PROCEEDING**

   In any civil action, if the court finds that the conduct of any party in maintaining or defending any proceeding was in bad faith or without substantial justification the court may require the offending party or the attorney advising the conduct or both of them to pay to the adverse party the costs of the proceeding and the reasonable expenses, including reasonable attorney's fees, incurred by the adverse party in opposing it.

relationship between the defamatory statement and the anticipated judicial proceeding is one of law for the court unless there is a dispute as to whether or not that relationship in fact existed. *Sindorf v. Jacron Sales Co.*, 27 Md.App. 53, 67, 341 A.2d 856 (1975), *aff'd*, 276 Md. 580, 350 A.2d 688 (1976); 50 Am.Jur.2d, Libel and Slander, § 200; Restatement of Torts, 2d, §§ 613, 619 comment a.

█ Whether the defamatory matters concerning Arundel's product which Green communicated to Arundel's customers on November 6, 1986, had any relationship to the suit which Ashcraft and Gerel contemplated in good faith instituting on behalf of Linwood Cherry was a material fact on which their absolute privilege depended. Green's affidavit and his deposition testimony contained his *bald conclusion* that on November 6, 1986, they contemplated a judicial proceeding on behalf of Cherry in good faith and that his defamation of Arundel related to that proposed litigation. His conclusion as to that material fact, however, was disputed by inferences permissible from the allegations of the complaint subsequently filed on behalf of Cherry. In that complaint it was asserted that Cherry's asbestosis was caused *solely* by products supplied by parties other than Arundel. Given this state of the record before the hearing court, we hold that the resolution of the issue of whether the defamatory matter published by Green had some relation to the suit his firm proposed to file on behalf of Cherry was for the trier of the facts. Summary judgment was therefore improper. Rule 2–501; *DiGrazia v. County Exec. for Mont. Co.*, 288 Md. 437, 445, 418 A.2d 1191 (1980); *Wyand v. Patterson Agency, Inc.*, 266 Md. 456, 460, 295 A.2d 773 (1972).

JUDGMENT VACATED; CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE CITY FOR FURTHER PROCEEDINGS.

COSTS TO BE PAID BY THE APPELLEES.