579 A.2d 1213

**Cindy Lynn DIXON, Individually, etc.**

v.

**Diane Frances DeLANCE, et al.**

No. 1908, Sept. Term, 1989.

Court of Special Appeals of Maryland.

Oct. 1, 1990.

Certiorari Denied Jan. 4, 1991.

Carol L. McCulloch, Towson, for appellant.

Alvin I. Frederick and Kenneth H. Meltzer (Eccelston and Wolf on the brief), Baltimore, for appellees.

Argued before KARWACKI, ROBERT M. BELL and WENNER, JJ.

KARWACKI, Judge.

This appeal concerns the applicability of the privileges possessed by an attorney and his client to publish defamatory statements about persons in a judicial proceeding in which those defamed persons were neither parties nor witnesses. We must also decide whether the trial court was clearly erroneous in concluding that the slander suit brought by the allegedly defamed persons against the attorney and his client was without substantial justification so as to justify sanctions pursuant to Rule 1–341.[1]

On August 28, 1989 in the Circuit Court for Baltimore County, an emergency hearing was conducted in *Burton W. Sandler v. Diane DeLance,* Case No. 56/295/89CSP2685. Carol McCulloch represented Sandler and Bruce Kaufman represented DeLance. The hearing concerned the custody and visitation of the parties' two year old child. After argument by counsel and a conference in chambers, the court passed an order defining *pendente lite* custody and

---

**1.** Rule 1–341 provides:

> In any civil action, if the court finds that the conduct of any party in maintaining or defending any proceeding was in bad faith or without substantial justification the court may require the offending party or the attorney advising the conduct or both of them to pay to the adverse party the costs of the proceeding and the reasonable expenses, including reasonable attorney's fees, incurred by the adverse party in opposing it.

visitation of the minor child. After the court announced its decision, the following colloquy took place:

MR. KAUFMAN: Your Honor, there is one other problem that you may or may not feel is appropriate to consider. Mr. Sandler has living in his home now a couple, man and woman, who are not married to each other and there is another illegitimate child there in the home. I'm not certain that that is a proper environment for this two year old to be present.

UNIDENTIFIED PERSON: Your Honor, if I might—

THE COURT: Sir, you are out of order. You are not authorized to speak.

MR. KAUFMAN: What I'm suggesting is that while the child is with him for that particular evening in Baltimore, that those people shouldn't be in the home.

MS. MCCULLOCH: Your Honor, they are only visiting at the moment, although we absolutely protest the slanderous remarks that have been made.

THE COURT: As far as I'm concerned that takes care of it. They are agreed that they will not be there during that period of time.

On September 11, 1989, McCulloch, now representing Cindy Lynn Dixon, individually and as guardian and next friend of Carrie Christine Dixon, a minor, instituted the instant case by filing a complaint in the Circuit Court for Baltimore County against DeLance and Kaufman. The Plaintiffs, seeking damages, alleged in pertinent part:

3. That on or about August 24, 1989, the Defendant, Diane Frances DeLance, in conversation with the Defendant, Bruce A. Kaufman, and with the intent that he republish same, stated words to the effect that the Plaintiff, Carrie Christine Dixon, a minor of six years of age, had been conceived out of wedlock by the Plaintiff, Cindy Lynn Dixon.

4. That on or about August 28, 1989, in a hearing [in] open Court in the Circuit Court for Baltimore County *Sandler v. DeLance*, 56/295/89CSP2685, before a num-

ber of witnesses, both known and strangers to the Plaintiffs, Defendant, Bruce A. Kaufman stated "Mr. Sandler has living in his home now a couple, man and woman, who are not married to each other and there is another illegitimate child there in the home. I'm not certain that that is a proper environment for this two year old to be present."

5. That said statement was a repetition of the slanderous statements previously made to Defendant, Bruce A. Kaufman, by Defendant, Diane Frances DeLance.

6. That said statement referred to the Plaintiff, Cindy Lynn Dixon, and her daughter, the minor Plaintiff, Carrie Christine Dixon, and a friend of Mr. Sandler's, Howard Scheff, who were the only persons staying in the home of Mr. Sandler, other than his son, at that time.

7. That Ms. Dixon and Mr. Scheff are not married and were as of the date of the slander, both staying separately as guests in the home of Mr. Sandler to comfort him in a time of crisis.

8. That Ms. Dixon and Mr. Scheff do not live together, Ms. Dixon residing at the address above-cited, and Mr. Scheff residing in Ocean City, Maryland. That their behaviour in the home of Mr. Sandler, as can be verified by witnesses, has been above reproach.

9. That the minor Plaintiff, Carrie Christine Dixon, was born to the Plaintiff, Cindy Lynn Dixon, on September 21, 1982.

10. That the Plaintiff, Cindy Lynn Dixon, was legally married to Mark Clifton Dixon on September 10, 1981, in Baltimore City, Maryland, and divorced from him by Judgment of the Circuit Court for Baltimore City, case 84352071/CE28788, on June 6, 1985.

11. That photocopies of the marriage certificate, and Judgment of Divorce of Cindy Lynn Dixon and Mark Clifton Dixon, as well as the birth certificate of their daughter, Carrie Christine Dixon, are attached hereto as exhibits and prayed to be made a part hereof.

12. That the statements made by both Defendants were false, intentional, and defamed the character of the Plaintiff, Cindy Lynn Dixon, and spoken with malice and/or reckless, wanton and willful disregard for their truth or falsity and with the intention of damaging the reputation of the Plaintiffs.

. . . .

17. That the defamatory statements as to the chastity of the Plaintiff, Cindy Lynn Dixon, are slander *per se,* under Maryland Law.

In her affidavit made part of the complaint, Dixon verified its allegations.

On October 12, 1989, DeLance filed a Motion to Dismiss the Complaint, coupled with a request that attorney's fees be awarded pursuant to Rule 1–341. Kaufman filed a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment, which also contained a request for Rule 1–341 sanctions. Attached as Exhibit 1 to Kaufman's motion was the transcript of the entire August 28, 1989 proceedings in *Sandler v. DeLance,* the hearing in which the alleged defamatory statements occurred. In her Motion to Dismiss, DeLance argued that any alleged statements on her part were made to her attorney, Kaufman, and were absolutely privileged by virtue of the attorney-client relationship. Further, both DeLance and Kaufman argued that the alleged defamatory statements were made in a judicial proceeding; hence, they were absolutely privileged under Maryland law.

The court after a hearing granted both motions, treating Kaufman's motion as one for summary judgment as permitted by Rule 2–322(c). The court further ruled that attorneys' fees were "absolutely called for in this situation." With regard to the alleged statements by Ms. DeLance, the court found that "any statements that she made were made in furtherance of the litigation or in furtherance of some matter which she had the right to bring to the attention of her attorney and her attorney had the right to bring to the attention of the Court." The court further observed: "I

don't think that there is anything that Mr. Kaufman said that was not relevant to the situation. Everything that he said did in fact bear some relationship."

The court then scheduled a further hearing in order to hear evidence concerning the facts and circumstances surrounding the filing of the claim and the reasonableness of the claimed attorneys' fees. At that hearing, the parties stipulated that the attorneys' fees and expenses incurred by DeLance and Kaufman in the total amount of $1,498.35 were fair and reasonable. They further stipulated that the law suit was filed following consultation between Dixon and McCulloch and that the amount of the attorneys' fees and costs be assessed against both Dixon and her counsel. Based on those stipulations the court entered judgment in favor of DeLance and Kaufman and against Dixon and McCulloch in the amount of $1,498.35, plus interest and costs.

Dixon appealed the summary judgment in favor of Kaufman and the award of attorneys' fees in favor of both DeLance and Kaufman. McCulloch joined in the appeal of the award of attorney's fees. Dixon did not appeal the granting of the Motion to Dismiss in favor of DeLance.

Dixon argues that since she and her minor daughter were not parties or witnesses in *Sandler v. DeLance* that the privilege accorded attorneys did not protect Kaufman from liability for his defamatory statements. Alternatively, Dixon posits that the defamatory statements had no relation to the proceedings in which they were uttered and hence were not privileged. Finally, Dixon and McCulloch challenge the propriety of the Rule 1–341 sanctions.

■ Before addressing these contentions we must first consider appellees' motion to dismiss this appeal because of appellants' non-compliance with Rule 8–501(c). Appellees correctly point out that appellants filed a totally inadequate record extract. The deficiencies, however, have been supplied by appellees in the appendix to their brief and appellees have not been prejudiced. *Williams v. Johnson*, 261

Md. 463, 468, 276 A.2d 95 (1971); *Bodnar v. Brinsfield*, 60 Md.App. 524, 528, 483 A.2d 1290 (1984). Therefore, we shall deny the motion but require that the costs of printing appellees' appendix shall be paid by the appellants. Rule 8–501(1).

## THE ATTORNEY'S PRIVILEGE

An attorney at law is absolutely privileged to publish defamatory matter concerning another in the course of a judicial proceeding in which he participates as counsel so long as the matter published has some reference or relation to the proceeding. *Keys v. Chrysler Credit Corp.*, 303 Md. 397, 403–07, 494 A.2d 200 (1985); *Adams v. Peck*, 288 Md. 1, 3–4, 415 A.2d 292 (1980); *DiBlasio v. Kolodner*, 233 Md. 512, 521–23, 197 A.2d 245 (1964); *Kennedy v. Cannon*, 229 Md. 92, 95–96, 182 A.2d 54 (1962); *Maulsby v. Reifsnider*, 69 Md. 143, 14 A. 505 (1888); *Arundel Corp. v. Green*, 75 Md.App. 77, 82–83, 540 A.2d 815 (1988). In the seminal case of *Maulsby v. Reifsnider*, 69 Md. at 151, 14 A. 505, the Court of Appeals explained the public policy which supports the privilege:

> All agree, that counsel are privileged and protected to a certain extent, at least, for defamatory words spoken in a judicial proceeding, and words thus spoken are not actionable, which would in themselves be actionable, if spoken elsewhere. He is obliged in the discharge of a professional duty to prosecute and defend the most important rights and interests, the life it may be, or the liberty or the property of his client, and it is absolutely essential to the administration of justice that he should be allowed the widest latitude in commenting on the character, the conduct and motives of parties and witnesses and other persons directly or remotely connected with the subject-matter in litigation. And to subject him to actions of slander by every one who may consider himself aggrieved, and to the costs and expenses of a harassing litigation, would be to fetter and restrain him in that open and fearless discharge of duty which he owes to his client,

and which the demands of justice require. Not that the law means to say, that one, because he is counsel in the trial of a cause, has the right, abstractly considered, deliberately and maliciously to slander another, but it is the fear that if the rule were otherwise, actions without number might be brought against counsel who had not spoken falsely and maliciously. It is better therefore to make the rule of law so large that counsel acting *bona fide* in the discharge of duty, shall never be troubled, although by making it so large, others who have acted *mala fide* and maliciously, are included.

The *Maulsby* court, however, expressly rejected the view of the English courts that the privilege was unconditional. Rather, it adopted the view of a great majority of the American courts that the absolute privilege only protected counsel for statements which have some "reference or relation to, or connection with, the case before the Court." *Id.* 69 Md. at 162, 14 A. 505. Nevertheless, the Court pointed out that evidentiary relevance was not the test to be applied to a statement to determine whether it qualified for the privilege:

We quite agree however with Bramwell, J.A. in *Seaman v. Netherclift,* that *'relevant'* and *'pertinent'* are not the best words that could be used. These words have in a measure a technical meaning, and we all know the difficulty in determining in some cases what is relevant or pertinent. With Lord Chancellor Cairns we prefer the words *'having reference'* or *'made with reference'* or the language of Shaw, C.J., *'having relation to the cause or subject matter.'* And *if counsel in the trial of a cause maliciously slanders a party, or witness or any other person in regard to a matter that has no reference or relation to, or connection with, the case before the Court, he is and ought to be answerable in an action by the party injured.*

*Id.* at 162, 14 A. 505 (emphasis in the last sentence supplied).

■ In the instant case Dixon argues that Kaufman's statement as DeLance's counsel was not relevant to the issue of whether visitation of DeLance's child should take place in the home of her father. She asserts that since neither she nor her child were parties or witnesses in the case before the court, any reference to them was not relevant and, consequently, beyond the protection of the attorney's privilege. We disagree.

■ Dixon's argument ignores the distinction between the relevance of evidence as a test for its admissibility at trial and the condition for the applicability of the attorney's privilege to publish defamatory statements in the course of a judicial proceeding. Evidentiary relevance is not the test. Rather, the issue to be resolved from the undisputed material facts is whether the presence of a couple with an illegitimate child during the time of visitation of DeLance's child with the father had any "reference or relation to, or connection with" the terms which the court was to impose upon that visitation. The comments which Kaufman made related to the propriety of certain persons being present while the visitation took place. As such, they met the condition for the application of the privilege.

■ We also decline Dixon's invitation to add another qualification to the attorney's privilege so that it would only be applicable when the attorney made a statement concerning a party or witness in the case. Dixon has cited no authority for this proposition, and we have found none. Moreover, such a limitation on the attorney's privilege would, in our view, be inconsistent with the broad view which the Court of Appeals has taken of the scope and effect of this important privilege. As the Court remarked in outlining the boundaries of the privilege in *Maulsby v. Reifsnider*, 69 Md. at 151, 14 A. 505:

> it is absolutely essential to the administration of justice that [the attorney] should be allowed the widest latitude in commenting on the character, the conduct and motives of parties and witnesses *and other persons directly or*

*remotely connected with the subject-matter in litigation.*

(Emphasis supplied.)

## THE SANCTIONS

The standard of a review which we shall apply to the Rule 1–341 sanctions imposed upon appellants on the separate motions of the appellees was set forth in *Legal Aid v. Bishop's Garth,* 75 Md.App. 214, 220–21, 540 A.2d 1175, *cert. denied.,* 313 Md. 611, 547 A.2d 188 (1988):

> Before a court metes Rule 1–341 sanctions, it must make an evidentiary finding of 'bad faith' or 'lack of substantial justification.' ... Whether bad faith or lack of substantial justification is found by a court to exist in any given case is a question of fact subject to a 'clearly erroneous' standard of review. Once a court finds that a party or counsel has acted in bad faith or without substantial justification the court may apportion costs and reasonable attorney's fees or may choose not to award fees at all. On appeal the appropriateness of the sanction imposed is reviewed under an abuse of discretion standard, and the sanction will not be disturbed unless there has been an abuse of discretion.

(Citations omitted.)

Because the appellees were asserting discrete privileges, whether appellants were without substantial justification in suing either of them will be considered separately.

■ With regard to Kaufman, appellants were urging the court to adopt an additional refinement to the qualification of published defamation in a judicial proceeding for protection of the attorney's privilege. The issue had not before been raised in the appellate courts of this State, and the appellant's purpose being to establish law in this regard, there is no basis for the award of sanctions under Rule 1–341 within the reasoning of *Needle v. White,* 81 Md.App. 463, 568 A.2d 856 (1990), or *Legal Aid.* Consequently, the

court was clearly erroneous in concluding that appellants filed suit against Kaufman without substantial justification.

A different situation is presented, however, with regard to the suit against DeLance. As a party to *Sandler v. DeLance,* she enjoyed an absolute privilege to publish defamatory matter in the course of that proceeding. *Keys v. Chrysler Credit Corp.,* 303 Md. at 403–04, 494 A.2d 200; *Adams v. Peck,* 288 Md. at 3, n. 1, 415 A.2d 292; *Korb v. Kowaleviocz,* 285 Md. 699, 402 A.2d 897 (1979); *Gore v. Condon,* 87 Md. 368, 377, 39 A. 1042 (1898). Unlike the qualification adopted with regard to the attorney's privilege, the Court of Appeals has "accepted the minority or 'English' rule which afforded the absolute privilege to witnesses and parties without the necessity of demonstrating the relevance of the statement to the pending litigation." *Keys,* 303 Md. at 404, 494 A.2d 200. It was therefore immaterial that Dixon and her daughter were not parties or witnesses in *Sandler v. DeLance,* or that the statements which she caused to be published in the judicial proceeding allegedly had no relation to those proceedings. DeLance's statements published in the course of the judicial proceedings were absolutely privileged, and appellants were without substantial justification in bringing the action for defamation based upon them. The court was not clearly erroneous in so concluding and did not abuse its discretion in imposing the sanction on DeLance's motion.

The court made no distinction between the claim against Kaufman and that against DeLance in awarding the sanctions against appellants. Consequently, we shall vacate the judgment for sanctions and remand the case for consideration of the proper sanction to be imposed against appellants on DeLance's motion.

JUDGMENTS AFFIRMED IN PART AND REVERSED IN PART; CASE REMANDED FOR FURTHER PROCEEDINGS IN CONFORMITY WITH THIS OPINION; COSTS OF PRINTING APPENDIX TO APPELLEES' BRIEF TO BE PAID BY APPELLANTS; ALL OTHER

COSTS TO BE PAID THREE–FOURTHS BY APPEL-
LANTS AND ONE–FOURTH BY APPELLEES.