725 A.2d 612

**Stanley WOODRUFF**

v.

**Joseph TREPEL, et al.**

**No. 701, Sept. Term, 1998.**

Court of Special Appeals of Maryland.

March 2, 1999.

382

384

Stanley Woodruff, Forestville, for appellant.

Alvin I. Frederick, James E. Dickerman and Eccleston and Wolf, Baltimore, for appellees.

Argued before EYLER, ADKINS, and PAUL E. ALPERT (Retired, Specially Assigned), JJ.

ADKINS, Judge.

This appeal is from the dismissal of a defamation action filed by Stanley J. Woodruff, Sr., appellant, against his former spouse, Shirley C. Woodruff,[1] and her attorney, Joseph J. Trepel, Esq.,[2] appellees. Appellant alleges that appellees defamed him by accusing him of child abuse in a letter written by Trepel to appellant's attorney, which was then given by Mrs. Woodruff to their child's school principal. Appellees each filed a motion to dismiss the action on the ground that the statements made in the letter were privileged. Appellees asserted both the absolute privilege for statements made in the course of judicial proceedings, as well as various conditional privileges. Following a hearing, the circuit court granted appellees' motions to dismiss, without an opinion. This appeal followed.

## FACTS

Appellant and Mrs. Woodruff were involved in divorce and custody proceedings. Mrs. Woodruff was represented by Trepel. In September 1996, the trial court entered a custody order awarding custody of the Woodruffs' five-year old son to

---

1. Appellee, Mrs. Woodruff, elected not to file a brief in this matter.

2. Appellant's complaint also named Mr. Trepel's law firm, Hannon & Trepel, P.C., as a defendant. The arguments relating to the law firm are identical to those relating to Mr. Trepel as an individual. Thus, we refer to them collectively as "Trepel."

Mrs. Woodruff. Appellant appealed that order to this Court and oral argument was heard on May 9, 1997.

Immediately following oral argument, Trepel and appellant's attorney, Pere J. Jarboe, Esq., discussed the custody order. Trepel explained to Jarboe that Mrs. Woodruff was unhappy with appellant's alleged disregard for the custody order and she would no longer permit appellant to pick up their son from school and take him to swimming practice. Apparently, there had been an arrangement to do so on Tuesday and Thursday afternoons.

Following this conversation, Trepel wrote a letter to Jarboe, dated May 12, 1997, which memorialized the content of their discussions. The letter, in its entirety, is set forth as follows:

May 12, 1997

Mr. Pere J. Jarboe, Esq.

9560 Pennsylvania Avenue

Upper Marlboro, Maryland 20772

Dear Mr. Jarboe:

This letter is to document our conversation at the Court of Special Appeals this past Friday wherein I verbally informed you of the contents of this letter.

As you should know, Mr. Woodruff has previously attempted to hide Jeffrey from his mother. While the minor child was with him he coached the minor child to say ugly things to his mother over the telephone while she did not even know the child's whereabouts. From the transcript of the trial you have learned how your client physically abused and mistreated his daughter. Unfortunately, Mrs. Woodruff has learned that your client's verbally abusive behavior towards Jeffrey has continued.

Effective May 9, 1997 Mr. Woodruff will not be allowed to take his son from his school to swimming classes on Tuesday and Thursday after school. Mr. Woodruff shall not pick up the minor child during his visitation except at the times and places specified in the Court's order. Although Mrs. Woodruff has tried to encourage extra visitation between

your client and his son, Mr. Woodruff has once again used his visitation with Jeffrey to try and create friction and trouble between my client and her son. Mr. Woodruff's continued actions in telling his son negative things about his mother to try and have this young child argue his father's case for more visitation is simply unconscionable. His actions are also in direct violation of the court's custody order. If Mr. Woodruff's actions in speaking to the child about his complaints with the Court's decision regarding visitation and custody are continued, I will have no other option then [sic] to tell my client that she should return to court to file a contempt petition for violating the specific orders of Judge Casula and request that Courtt [sic] have Mr. Woodruff's visitation restricted to supervised visitation so that the child will not be confused and upset by Mr. Woodruff. This would effectively end Mr. Woodruff's overnight visitation with the child. We would also ask for punishment for Mr. Woodruff and our reasonable attorney's fees. Mrs. Woodruff will not continue to allow her son to be harmed by Mr. Woodruff's immature behavior.

Please inform Mr. Woodruff of the contents of this letter and that he is to adhere to the Court's custody order in this case. I request that you contact me to assure that there is no misunderstanding about this matter so that the child is not placed in a position of peril because this information is alleged not to have been communicated to your client.

Very truly yours,

Joseph J. Trepel, Esquire

cc: Shirley Woodruff

Trepel, as indicated, also sent a copy of this letter to his client who, in turn, republished the letter to the principal of her son's school. Appellant alleges that he "sustained damages by way of out-of-pocket expenses, humiliation and loss of his good name and personal reputation."

## DISCUSSION

Appellant, *pro se*, contends that the trial court erred in dismissing his complaint because: 1) the privilege of repub-

lishing words from a judicial proceeding does not apply when no public or private duty requires it; 2) the privilege does not apply when the republishing is done with malice; and 3) the dismissal was inappropriate because the circumstances were "orchestrated to appear in privilege form." We have condensed appellant's arguments into the single question of whether the lower court erred in granting the defendants' motions to dismiss his claim for defamation based on the ground that the alleged defamatory statement was privileged under the absolute privilege for statements made in the course of judicial proceedings.

Trepel argues that appellant cannot maintain a claim for defamation because all statements were published during the course of a judicial proceeding, and regardless of their truth or the presence of malice, the defamation claim is barred by the application of the absolute judicial privilege. Alternatively, Trepel contends that the defamation claim fails because the alleged defamatory statements are true. Mrs. Woodruff filed no brief in this Court. She asserted below, in her motion to dismiss, the absolute privilege for judicial proceedings, various conditional privileges, and that the statements were true.

### Standard of Review

Because a motion to dismiss lies where there is no justiciable controversy, see *Broadwater v. State*, 303 Md. 461, 467, 494 A.2d 934 (1985), "[d]ismissal is proper only if the facts and allegations ... would ... fail to afford plaintiff relief if proven." *Faya v. Almaraz*, 329 Md. 435, 443, 620 A.2d 327 (1993). In a claim for defamation, a motion to dismiss on grounds that the alleged defamatory statement is privileged should only be granted if the privilege is an absolute one and should not be granted when a conditional privilege is asserted. *See Leese v. Baltimore County*, 64 Md.App. 442, 476, 497 A.2d 159, *cert. denied*, 305 Md. 106, 501 A.2d 845 (1985), *overruled on other grounds, Harford County v. Town of Bel Air*, 348 Md. 363, 704 A.2d 421 (1998); *see also Tynecki v. Tufts Univ. Sch. of Dental Med.*, 875 F.Supp. 26, 36 (D.Mass.1994); *John-*

*son v. Resources for Human Dev., Inc.*, 860 F.Supp. 218, 221 (E.D.Pa.1994).

## Defamation

The gravamen of appellant's defamation claim is the assertion in Trepel's letter that appellant had physically abused his daughter. The letter specifically referred to testimony of the supposed abuse at a hearing that was part of the pending custody litigation.

■ First, we briefly review the elements of a prima facie case for defamation. In Maryland, to establish a prima facie case for defamation, "a plaintiff must ordinarily establish that the defendant made a defamatory statement to a third person; that the statement was false; that the defendant was legally at fault in making the statement; and that the plaintiff thereby suffered harm." *Rosenberg v. Helinski*, 328 Md. 664, 675, 616 A.2d 866 (1992), *cert. denied*, 509 U.S. 924, 113 S.Ct. 3041, 125 L.Ed.2d 727 (1993). The defamatory statement must "expose a person to public scorn, hatred, contempt or ridicule[.]" *Batson v. Shiflett*, 325 Md. 684, 722, 602 A.2d 1191 (1992).

■ There are, however, circumstances in which a person will not be held liable for a defamatory statement because the person is acting "in furtherance of some interest of social importance, which is entitled to protection. . . ." W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 114, at 815 (5th ed.1984). The circumstances in which these important social interests arise are encompassed by the doctrine of privilege. *See id.* §§ 114–15, at 815, 824. In this case we are primarily concerned with the absolute privilege relating to statements made in the course of judicial proceedings.

## Absolute Judicial Privilege

■ It is well-settled in Maryland that statements uttered in the course of a trial or contained in pleadings, affidavits, or other documents related to a case fall within an absolute privilege, and therefore cannot serve as the basis for an action in defamation. *See Keys v. Chrysler Credit Corp.*,

303 Md. 397, 403–04, 494 A.2d 200 (1985). The absolute privilege protects a person who published a statement from liability, even if the person knew that the statement was false, published it with malice, or acted in an otherwise unreasonable manner. *See Adams v. Peck,* 288 Md. 1, 3, 415 A.2d 292 (1980). "The privilege remains absolute whether the defamatory statements be relevant or irrelevant to the subject matter of the proceedings." *Rosenberg,* 328 Md. at 676, 616 A.2d 866.

The rationale behind the privilege, as recognized in this State, is more than a century old. In *Hunckel v. Voneiff,* 69 Md. 179, 198, 14 A. 500 (1888), the Court of Appeals acknowledged "[t]he great importance to the administration of justice that witnesses should testify with minds absolutely free from the apprehension of being annoyed by civil actions for any thing they may say as witnesses[.]" *Accord Adams,* 288 Md. at 5, 415 A.2d 292. Because of the need to encourage witnesses "to speak freely in court, without intimidation by the possibility of civil liability, an individual's right to redress for defamation is necessarily curtailed." *Rosenberg,* 328 Md. at 677, 616 A.2d 866.

### The Claim Against Trepel

▉ In evaluating appellant's claim against Trepel, we must look at the particular aspect of the judicial proceedings privilege pertaining to statements made by attorneys. "An attorney at law is absolutely privileged to publish defamatory matter concerning another in the course of a judicial proceeding in which he participates as counsel so long as the matter published has some reference or relation to the proceeding." *Dixon v. DeLance,* 84 Md.App. 441, 448, 579 A.2d 1213 (1990), *cert. denied,* 321 Md. 501, 583 A.2d 275 (1991). The test for determining whether a statement qualifies for the privilege is not the evidentiary relevance test. *See id.* at 449, 579 A.2d 1213. Judge Karwacki, speaking for this Court in *Dixon* on the issue of whether a statement qualifies under this privilege, quoted from the seminal case of *Maulsby v. Reifsnider,* 69 Md. 143, 14 A. 505 (1888):

We quite agree ... that *'relevant'* and *'pertinent'* are not the best words that could be used. These words have in a measure a technical meaning, and we all know the difficulty in determining in some cases what is relevant or pertinent.... [W]e prefer the words *'having reference'* or *'made with reference'* or the language ... *'having relation to the cause or subject matter.'* And *if counsel in the trial of a cause maliciously slanders a party, or witness or any other person in regard to a matter that has no reference or relation to, or connection with, the case before the Court, he is and ought to be answerable in an action by the party injured.*

*Id.* at 449, 579 A.2d 1213 (quoting *Maulsby,* 69 Md. at 162, 14 A. 505 (emphasis in original)).

 In the last century, the Maryland judiciary has broadened the judicial proceedings privilege. *See, e.g., Rosenberg,* 328 Md. at 676, 616 A.2d 866. The privilege has been held to include statements not actually made in the courtroom during a proceeding. *See id.* at 677, 616 A.2d 866. The Court of Appeals in *Adams* extended the privilege to defamatory statements published in a document that was prepared for litigation, but not actually filed. *See Adams,* 288 Md. at 4, 415 A.2d 292. In *Adams,* two parents entered into an agreement under which the mother would have custody of a child and the father would have visitation rights. Several months after the agreement, the mother sought to modify the visitation schedule and the mother's attorney requested that she and the child seek evaluations from a psychologist. The psychologist completed an evaluation that accused the father of abusing one of the children. Although the mother used the report as a basis for the modification, the report was never filed with the court. The Court held that the report fell under the absolute privilege because it "was published during the course of [a] judicial proceeding" even though it was never filed as a document in the case. *Adams,* 288 Md. at 8, 415 A.2d 292.

The privilege was expanded further by this Court in *Arundel Corp. v. Green,* 75 Md.App. 77, 540 A.2d 815 (1988).

There, this Court held that the privilege applied where an attorney, *prior to the institution of any proceeding,* sent a letter to customers of a crushed stone supplier requesting information relating to any employees that had been exposed to asbestos from the dust of the crushed stone supplied by the Arundel Corporation. *See id.* at 79–80, 540 A.2d 815. The Court held that the communication was made in preparation for litigation and was thus encompassed within the broad definition of "judicial proceeding" for purposes of applying the judicial privilege. *See id.* at 84–85, 540 A.2d 815.

■ In the present case, Trepel's letter to Mr. Woodruff's attorney clearly "had relation" to the child custody proceedings. The purpose of the letter was to request that appellant conform his behavior to the Custody Order that was specifically referenced in the letter. Moreover, as appellees assert, the letter memorialized a conversation concerning the litigation that occurred on the day of oral argument in this Court.

In addition to the pending litigation in the custody matter, the letter also contained information directly related to a contemplated legal proceeding, as it asserted unequivocally:

If Mr. Woodruff's actions in speaking to the child about his complaints with the Court's decision regarding visitation and custody are continued, I will have no other option then [sic] to tell my client that she should return to court to file a contempt petition for violating the specific orders of Judge Casula....

■ As in *Dixon,* the issue in this case surrounds the visitation and custody of a child. It is clear from the above that the defamatory statements made in the letter were within the purview of the judicial privilege as they are rationally related to and reference the underlying litigation, in addition to a possible future litigation. The physical abuse alleged in the letter was purportedly testified to at trial. The purpose of the letter was to inform Mr. Woodruff that, in light of his continued objectionable behavior, Mrs. Woodruff has decided to cancel the extra visitation that had been temporarily agreed to and require him to abide by the terms of the court order.

Because intent and motive are not relevant to the application of the judicial proceedings privilege, *see Keys*, 303 Md. at 406, 494 A.2d 200, we need not examine them. Accordingly, for the reasons stated above, we hold that Trepel's sending the letter to appellant's attorney and the statements contained therein are covered by the judicial proceedings privilege. Therefore, the trial court acted properly in dismissing appellant's complaint against Trepel.

### Claim Against Mrs. Woodruff

Appellant's claim against Mrs. Woodruff for republication of the letter to the principal of the child's school requires a different analysis. Unlike the first publication, the second publication was not to a party, attorney, or witness in the case. Thus, we need to examine whether, under these circumstances, the judicial proceedings privilege applies.

 Before addressing the privilege issue, we pause to discuss the defamation law regarding republication of a defamatory statement made by another person. Mrs. Woodruff may be liable for defamation for republication of Trepel's letter even though she "repeated" the words of Trepel and ascribed the statements to the original speaker. *See Liberty Lobby, Inc. v. Dow Jones & Co.*, 838 F.2d 1287, 1298 (D.C.Cir.1988), *cert. denied*, 488 U.S. 825, 109 S.Ct. 75, 102 L.Ed.2d 51 (1988) (holding that "one who republishes a defamatory statement 'adopts' it as his own, and is liable in equal measure to the original defamer."). The Restatement (Second) of Torts sets forth an exception to this rule which allows one to escape liability for defamation if that person merely "delivers" or "transmits" the defamatory statement. *See* Restatement (Second) of Torts § 581. The Restatement continues to explain that a person who delivers or transmits the defamatory statement is liable, if he knows or has reason to know of its defamatory character. *See id.* In this case, the potentially defamatory character of the statement, if untrue, is evident from the very nature and content of the statement, i.e. accusing appellant of physical abuse of a child. Thus, *unless the*

*republication was privileged or true,* Mrs. Woodruff may be liable for defamation.

 We recognize that the judicial proceedings privilege is not limited to statements made by an attorney. As a party to the litigation, Mrs. Woodruff had an absolute privilege to publish defamatory matter in the course of a judicial proceeding. *See Keys,* 303 Md. at 403–04, 494 A.2d 200; *see also Adams,* 288 Md. at 3 n. 1, 415 A.2d 292; *Korb v. Kowaleviocz,* 285 Md. 699, 402 A.2d 897 (1979); *Dixon,* 84 Md.App. at 452, 579 A.2d 1213.

Given her status as a party to the custody litigation, the judicial proceedings privilege will apply to Mrs. Woodruff's republication of Trepel's letter if that republication can be considered to have been made *in the course of a judicial proceeding.* To analyze properly whether the absolute privilege extends to Mrs. Woodruff's republication, we must look to the policy underlying such privilege. Recently, the Court of Appeals restated the policy as follows:

> As a matter of public policy, the balance is struck heavily in favor of the free disclosure of information during a judicial proceeding. In order to achieve this balance, those who participate in the judicial process must be able to do so without the specter of potential civil liability for defamation hanging over their heads.

*Imperial v. Drapeau,* 351 Md. 38, 45, 716 A.2d 244 (1998).

 As mentioned previously, Maryland "has taken a 'broad view' of the scope of the privilege, holding that this 'important privilege' extends to administrative and other quasi-judicial proceedings." *Id.* The term "judicial proceeding" is "employed in a flexible fashion to embrace any governmental proceeding involving the exercise of a judicial or quasi-judicial function, including a wide variety of administrative boards, commissions, or other tribunals which may engage in judicial or quasi-judicial action though not part of the court system." *Id.* (quoting R.A. Smolla, *Law of Defamation* § 8.03[3][a] (1986, 1996 Supp.) (footnotes omitted)).

■ The privilege, however, is not boundless. The Court of Appeals in *Gersh* placed some clear limits on its application as it declined to extend the privilege to a witness testifying before a community relations commission. *See Gersh,* 291 Md. at 197, 434 A.2d 547. In doing so, the Court found that testimony before the commission equated to that at "an ordinary open public meeting" at which there are no procedural safeguards for the person being defamed. *See id.* at 196, 434 A.2d 547. The *Gersh* Court enunciated a two-factor balancing test to determine whether statements are encompassed within the absolute privilege: "(1) the nature of the public function of the proceeding and (2) the adequacy of procedural safeguards which will minimize the occurrence of defamatory statements." *Id.* at 197, 434 A.2d 547. It concluded that "[t]he public benefit to be derived from testimony at [c]ommission hearings of this type is not sufficiently compelling to outweigh the possible damage to individual reputations to warrant absolute witness immunity." *Id.* at 196, 434 A.2d 547.

We have previously stated with regard to Trepel, that statements covered by a privilege do not need to be made in the course of a hearing. Rather, the statement may be part and parcel of the proceeding as in *Miner v. Novotny,* 304 Md. 164, 498 A.2d 269 (1985), where a police brutality complaint made to an officer's superior was held to fall within the privilege. The Court in *Miner* applied the *Gersh* factors, and reasoned that abuse of police power is "extremely detrimental to the public interest." *Id.* at 176, 498 A.2d 269. It looked at the nature of such a disciplinary proceeding and the procedural protections afforded a policeman under the Law–Enforcement Officers' Bill of Rights. *See id.* at 173, 498 A.2d 269. These protections require that a brutality complaint be made by a person with personal knowledge, under oath; guarantee the officer the right to representation; and establish criminal penalties for filing false complaints. *See id.* at 174–75, 498 A.2d 269. Moreover, the hearing is adversarial in nature with witnesses under oath and the opportunity to cross-examine witnesses. *See id.* The Court concluded that the policy behind the privilege, i.e. the encouragement of the administra-

tion of justice, supported its application of the privilege to the complaint made in *Miner.* *See id.* at 177, 498 A.2d 269.

The Court of Appeals came to a similar conclusion in *Odyniec v. Schneider,* 322 Md. 520, 588 A.2d 786 (1991). There, the Court reviewed statements made by a physician expert witness about a patient in a health claims arbitration proceeding. The Court, in upholding the privilege, explained that the health claims arbitration procedure was functionally comparable to a trial and there were adequate procedural safeguards available to the defamed patient. *See id.* at 534, 588 A.2d 786. The Court, in reaching its decision, reasoned:

> *Gersh, Miner,* and *McDermott* thus stand for the proposition that absolute witness immunity will not be extended to a nonjudicial proceeding unless the same policy considerations which underlie the application of the privilege in the judicial sphere are also present. It must appear from the nature and conduct of the proceeding that society's benefit from unfettered speech during the proceeding is greater than the interests of an individual who might be defamed during that proceeding.

*Id.* at 531, 588 A.2d 786.

The lack of adequate procedural safeguards has been a limiting consideration in other contexts. In *McDermott v. Hughley,* 317 Md. 12, 561 A.2d 1038 (1989), the Court of Appeals declined to apply the privilege to statements made by a psychologist. In that case, a police officer who experienced physical and psychological trauma during mounted patrol exercises was asked by his employer to seek therapy with a psychologist. When the officer claimed that the report made by the psychologist was defamatory, the psychologist argued, *inter alia,* that the statements were privileged because they were made in a judicial proceeding. *See id.* at 22, 561 A.2d 1038. The Court rejected that argument and held that there were insufficient procedural safeguards. *See id.* at 26, 561 A.2d 1038. Specifically, the Court stated "[t]here was no legally cognizable tribunal administering the proceeding; there was no public hearing adversary in nature; no compella-

ble witnesses were sworn or cross-examined; no reviewable opinion or analysis was generated; and, most significantly, [the plaintiff] *did not have the opportunity to present his side of the story." Id.* (Emphasis added).

 We glean from our review of these prior Maryland decisions that, for the privilege to apply, the statement must be made to further a purpose falling within the public interest underlying the privilege, i.e. the unfettered disclosure of information needed for a judicial or quasi-judicial decision-making process. The requirement that there be adequate procedural safeguards to protect the interests of the individual who may be defamed comes into play largely as part of the determination of whether the allegedly defamatory statement was made in a judicial or quasi-judicial proceeding. In the circumstances presented in the instant case, we find neither a furtherance of the purpose of the privilege nor adequate procedural safeguards to protect the appellant, who was the subject of the letter.

In providing the school principal with the letter, Mrs. Woodruff did not report information that the school has the authority to adjudicate. The school is not a tribunal and is not engaged in a judicial or quasi-judicial role. The school is not even the appropriate entity for Mrs. Woodruff to report allegations of physical child abuse occurring outside of the school. The Social Services Administration, within the Department of Human Resources, is the agency to whom parental child abuse should be reported. *See* Md.Code (1984, 1999 Repl.Vol.), §§ 5–701, *et seq.* of the Family Law Article (FL).[3] Even persons making reports directly to this agency are statutorily immune only if the report is made in good faith.

_____

3. The procedures established for investigation of alleged child abuse by Social Services, in conjunction with the local State's Attorney, provide for notice to the subject of the complaint and an administrative hearing if requested by the alleged abuser. *See* FL § 5–706.1. If criminal conduct is suspected the suspected abuse should also be reported to the appropriate law enforcement agency. *See id.*

*See* Md.Code (1974, 1998 Repl.Vol.), § 5–620 of the Courts & Judicial Proceedings Article.[4]

 Educators are encompassed within the statutory framework designed to protect against child abuse. FL § 5–704 mandates that an educator who receives information alleging child abuse shall immediately notify the local department of Social Services or appropriate law enforcement agency. *See* FL § 5–704(b)(2). This statutory obligation was presumably created to recognize that schools play an extensive role in the lives of children, and educators' frequent contact with children provides a critical source of information for discovering child abuse that may occur in or out of school. The educator, however, takes no other action than passing information along to the correct authorities. Neither the extensive role of the school in childrens' lives nor the school's obligation to make reports of suspected child abuse to Social Services creates an absolute privilege to defame on the part of anyone participating in a report of abuse of neglect. As indicated earlier, the Courts & Judicial Proceedings Article provides that in order to receive the immunity granted by section 5–620, one must act "in good faith" in making a report of abuse or neglect.

 If Mrs. Woodruff had contacted the school in order to obtain information or testimony for use in the custody trial, then the absolute judicial proceedings privilege would have applied. *See Arundel Corp.*, 75 Md.App. at 86, 540 A.2d 815. There was no allegation or suggestion in the pleadings, however, that the school was contacted for this purpose.

---

4. Section 5–620 provides:

> Any person who in good faith makes or participates in making a report of abuse or neglect under § 5–704 or § 5–705 of the Family Law Article or participates in an investigation or a resulting judicial proceeding is immune from any civil liability or criminal penalty that would otherwise result from making or participating in a report of abuse or neglect or participating in an investigation or a resulting judicial proceeding.

Md.Code (1974, 1998 Repl.Vol.), § 5–620 of the Courts and Judicial Proceedings Article.

Informing the school that Mr. Woodruff could no longer pick up the child on Tuesday and Thursday afternoons was certainly of legitimate interest to the school. Further, it was important to all concerned that the school be advised of the current status of custody arrangements. The school's knowledge, however, did not have any actual or potential effect upon the custody proceedings, and thus did not further the administration of justice.

We do not say that Mrs. Woodruff did not have a conditional privilege to communicate to her child's school regarding the custody and visitation arrangements for her child. We simply decline to apply the absolute privilege for judicial proceedings under these circumstances.

### Conditional Privileges

As alternative grounds in her motion to dismiss, Mrs. Woodruff asserted several conditional privileges. She claimed privilege based on 1) a mutual interest in the subject matter between herself and the school, 2) a furtherance of her legitimate private interest in preventing the improper release of her child to appellant's custody, and 3) a fair and accurate report of what transpired at a judicial proceeding.

Conditional or qualified privileges in defamation law evolved in a similar manner to that of an absolute privilege, as a means of weighing an important societal interest against the interest of an individual to vindicate injury to his reputation. *See* Prosser, *supra,* § 115, at 824–25. Conditional privileges "rest upon the notion that a defendant may escape liability for an otherwise actionable defamatory statement, if publication of the utterance advances social policies of greater importance than the vindication of a plaintiff's reputational interest." *Marchesi v. Franchino,* 283 Md. 131, 135, 387 A.2d 1129 (1978). For instance, a conditional privilege exists "when the occasion shows that the communicating party and the recipient have a mutual interest in the subject matter, or some duty with respect thereto." *McDermott,* 317 Md. at

28, 561 A.2d 1038 (quoting *Simon v. Robinson*, 221 Md. 200, 206, 154 A.2d 911 (1959)).

The existence of a conditional privilege is a question of law for the judge, and the burden of proof is upon the defendant. *See Simon*, 221 Md. at 205, 154 A.2d 911. A conditional privilege may be lost, however, if the plaintiff can prove the defamatory publication was made for a purpose other than furthering the applicable societal interest, or that the publisher made the statement with malice. *See McDermott*, 317 Md. at 29, 561 A.2d 1038. Once a judge determines that a privilege exists, the question of whether the privilege was abused is for the jury, subject to the censorial power of the judge where there is no evidence of malice, and the burden on the issue is on the plaintiff. *See Simon*, 221 Md. at 205–06, 154 A.2d 911; *General Motors Corp. v. Piskor*, 277 Md. 165, 172, 352 A.2d 810 (1976). The Court of Appeals in *Fresh v. Cutter*, 73 Md. 87, 93–94, 20 A. 774 (1890), with regard to abuse of a privilege, explained:

> [T]he plaintiff has the right notwithstanding the privileged character of the communication to go to the jury, if there be evidence tending to show actual malice, as when the words unreasonably impute crime, or the occasion of their utterance is such as to indicate, by its unnecessary publicity or otherwise, a purpose wrongfully to defame the plaintiff. . . . Or, malice may be established by showing that the publication contained matter not relevant to the occasion. Expressions in excess of what the occasion warrants do not *per se* take away the privilege, but such excess may be evidence of malice.

"[M]alice means 'a reckless disregard of truth, the use of unnecessarily abusive language, or other circumstances which would support a conclusion that the defendant acted in an ill-tempered manner or was motivated by ill-will.'" *Orrison v. Vance*, 262 Md. 285, 295, 277 A.2d 573 (1971) (quoting *Stevenson v. Baltimore Baseball Club, Inc.*, 250 Md. 482, 487, 243 A.2d 533 (1968), *overruled on other grounds, Marchesi*, 283 Md. 131, 387 A.2d 1129). All relevant circumstances are

admissible to determine whether there has been an abuse of a conditional privilege, "including the defendant's reasonable belief in the truth of his statements, the excessive nature of the language used, and whether the communication was made in a proper manner and only to proper parties." *Id.* (Citations omitted).

In this case, the trial judge dismissed appellant's complaint against all defendants for "the reasons stated in the pleadings...." It is unclear on which privilege the trial judge relied in dismissing appellant's complaint with prejudice. We have already explained that the absolute privilege for judicial proceedings does not apply to Mrs. Woodruff. The granting of a motion to dismiss on the basis of an asserted conditional privilege, however, is not appropriate where the complaint alleges facts that would support an abuse of that privilege. *See Leese,* 64 Md.App. at 476, 497 A.2d 159; *see also Tynecki,* 875 F.Supp. at 34–35 (motion to dismiss cannot be granted on grounds of conditional privilege where complaint alleges abuse of privilege); *Johnson,* 860 F.Supp. at 221, 223 (allegations of abuse of privilege raise material fact issues and require denial of motion to dismiss). Mr. Woodruff alleged in the complaint that Mrs. Woodruff acted with actual malice in the republication to the school principal of Trepel's letter. He supported this allegation with pertinent facts in his complaint. Accordingly, he had a right to have the trier of his case determine whether any conditional privilege held by Mrs. Woodruff was abused. His complaint should not have been dismissed at this stage of the proceedings on the grounds of a conditional privilege.

### Conclusion

For the reasons stated above, the absolute privilege for judicial proceedings applied to Trepel's sending the letter to counsel for Mr. Woodruff, and so we affirm the dismissal of appellant's complaint with regard to Trepel. We decline to extend the absolute judicial privilege to the circumstances involving Mrs. Woodruff's republication of the alleged defamatory material to her child's school. We make no determina-

tion as to the existence of any of the conditional privileges under defamation law that may or may not apply in this case. We remand the case to the Circuit Court for Prince George's County for further proceedings consistent with this Opinion.

**JUDGMENT AFFIRMED IN PART AND REVERSED IN PART; CASE REMANDED TO THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION; COSTS TO BE PAID ONE–HALF BY APPELLANT AND ONE–HALF BY APPELLEE, SHIRLEY C. WOODRUFF.**