81 A.3d 631

**Mark T. MIXTER**

v.

**James FARMER, et al.**

**No. 1804, Sept. Term, 2012.**

Court of Special Appeals of Maryland.

Dec. 19, 2013.

538

Mark T. Mixter, Baltimore, MD, for appellant.

James E. Farmer, Waldorf, MD (Edward J. Hutchins, Jr., Richard J. Berwanger, Jr., Eccleston and Wolf, PC, Hanover, MD), on the brief, for appellee.

Panel: KRAUSER, C.J., MATRICCIANI, CHARLES E. MOYLAN, JR. (Retired, Specially Assigned), JJ.

MATRICCIANI, J.

Appellant filed a lawsuit against appellee James Farmer based on letters that Farmer sent to various lawyers regarding appellant's "unprofessional" conduct. In the complaint, appellant alleged defamation, libel, slander, and intentional infliction of emotional distress. He later filed amended complaints to add counts for tortious interference with contract and tortious interference with prospective advantage. Appellant also added appellee Charles Bowie as a party defendant. Appellees filed separate motions to dismiss. Both were denied. Appellees then filed separate motions for summary

judgment and requests for a hearing. Following a hearing, on October 12, 2012, the trial court granted appellees' motions for summary judgment. This timely appeal followed.

QUESTIONS PRESENTED

Appellant presents several questions, which we summarize below in two questions:

I. Whether the trial court erred in granting appellees' motions for summary judgment and holding that absolute judicial privilege and/or qualified privilege immunized appellees from the following claims: 1) defamation, libel, and slander; 2) intentional infliction of emotional distress; 3) interference with appellant's existing contracts; and 4) interference with appellant's prospective advantage?

II. Whether the trial court erred in holding that, absent any privilege, the appellees did not state a cognizable claim for intentional infliction of emotional distress, tortious interference with appellant's existing contracts, or tortious interference with appellant's prospective advantage?

For the reasons that follow, we answer no to both questions and affirm.

FACTUAL AND PROCEDURAL HISTORY

To characterize Farmer and Mixter's relationship as acrimonious might be the understatement of the year. This court is sadly all too familiar with the antics of these litigants from a dispute a few years ago in the case of *Smith v. Keener,* Case No. 08–C–09–00896, in the Circuit Court for Charles County. In *Smith,* Farmer represented the plaintiff and appellant represented the defendant. While the case ultimately settled for a small amount of money, Farmer was so infuriated by Mixter's behavior that he sought sanctions against him. The trial court initially denied the motion for sanctions, but later granted it, only to be reversed by this court.

Thereafter, on August 12, 2010, Farmer sent twenty letters to various Maryland attorneys discussing appellant's "unpro-

fessional behavior" in the *Smith* case, and seeking information about other lawyers' negative experiences with Mixter for a potential complaint with the Attorney Grievance Commission of Maryland (AGC). Mixter retaliated by filing a defamation suit against Farmer on November 24, 2011. Farmer then sent additional letters to other local attorneys and individuals, including to one of Mixter's clients, seeking more information for his complaint. Farmer filed a grievance against appellant with the AGC on December 27, 2011.

In his initial complaint against Farmer, appellant alleged defamation, libel, slander, and intentional infliction of emotional distress. After Farmer sent the letter to appellant's client, Mixter filed an amended complaint which added counts for tortious interference with contract and tortious interference with prospective advantage. He filed a second amended complaint, which amended the first three counts of the complaint to note that Farmer made his defamatory statements intentionally, or with reckless disregard as to the statements' truth or falsity. Mixter then filed a third amended complaint against both appellees setting forth the same six counts. He added Bowie to the complaint because he believed that Bowie conspired with Farmer to send the letters. Appellees filed separate motions to dismiss, which were denied. Appellees then filed separate motions for summary judgment and requests for a hearing. On August 24, 2012, a hearing was held to consider appellees' motions. Thereafter, on October 12, 2012, the trial court granted appellees' motions for summary judgment. This timely appeal followed.

## DISCUSSION

### I.

Appellant alleges that the Circuit Court erred in granting appellees' motions for summary judgment and in finding that absolute judicial privilege immunized appellees from the following claims: 1) defamation, libel, and slander; 2) intentional infliction of emotional distress; 3) interference with appellant's existing contracts; and 4) interference with appellant's prospective advantage. We review a trial court's grant of a

motion for summary judgment for legal correctness. *Commercial Union Ins. Co. v. Harleysville Mut. Ins. Co.*, 110 Md.App. 45, 51, 675 A.2d 1059 (1996). In ruling on a motion for summary judgment, the trial court must determine that "there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law." *Jones v. Mid–Atl. Funding Co.*, 362 Md. 661, 675, 766 A.2d 617 (2001).

 Maryland courts recognize an absolute privilege for attorneys to make potentially defamatory statements if the statements have some rational relationship to the judicial proceedings. *Norman v. Borison,* 418 Md. 630, 650, 17 A.3d 697 (2011). The absolute privilege is broad and comprehensive in order to serve its purpose to foster the "free and unfettered administration of justice." *Keys v. Chrysler Credit Corp.*, 303 Md. 397, 404, 494 A.2d 200 (1985). Therefore, the privilege protects defamatory statements "even if his [or her] purpose or motive was malicious, he [or she] knew the statement was false, or his [or her] conduct was otherwise unreasonable." 418 Md. at 651, 17 A.3d 697 (quoting *Adams v. Peck,* 288 Md. 1, 3, 415 A.2d 292 (1980)) (brackets in original). The absolute privilege applies to the quasi-judicial proceedings before the AGC, and extends to statements made by attorneys prior to the commencement of judicial proceedings. *Kerpelman v. Bricker,* 23 Md.App. 628, 630, 329 A.2d 423 (1974) and *Arundel Corp. v. Green,* 75 Md.App. 77, 85, 540 A.2d 815 (1988).

 Appellant argues that the absolute privilege [1] does not protect the statements contained in any of Farmer's letters from defamation, libel, and slander claims. He also argues that absolute privilege does not apply to intentional infliction of emotional distress, tortious interference with existing contracts, and tortious interference with prospective advantage. We address each issue in turn.

---

1. For brevity, throughout this opinion, we use this term to refer to the privilege to make potentially defamatory statements in judicial or quasi-judicial proceedings without fear of suit.

The trial court found that Farmer's letters dated August 12, 2010 had a specific and rational relationship to the anticipated proceedings before the AGC, and thus were absolutely privileged. The trial court also found that Farmer's letters sent after filing his complaint with the AGC were privileged because they merely sought additional information regarding appellant's conduct.

 Mixter contends that the sixteen-month delay between Farmer's writing the letters and filing the grievance establishes that appellee did not intend originally to file a grievance, but only used this later filing as an excuse, after appellant sued him. Moreover, appellant says that the delay in filing means the letters were not written in furtherance of the AGC complaint. We disagree on both accounts. The record shows that Farmer's letters specifically mentioned that he was seeking information for a bar counsel complaint.[2] Although the delay in filing a grievance was lengthy, we agree with the trial court that it was not long enough to sever the clearly stated connection to the AGC complaint. Anyone reporting a grievance to the AGC is allowed time to gather evidence for his or her claims. Moreover, as we said earlier, absolute privilege extends to statements made prior to, and in contemplation of, judicial proceedings. *Arundel Corp. v. Green,* 75 Md.App. 77, 85, 540 A.2d 815 (1988). We also believe that appellee's stated reason for the delay, that the *Smith* case was still active, strikes us as reasonable.

Appellant then asserts that, even if the letters to other lawyers concerned the AGC, the letter to his client, Mr. Hancock, did not. We disagree. The letter to Mr. Hancock specifically mentioned that he was "in the process of filing several Bar Complaints against [Mixter]."

 Mixter contends that Farmer's lack of particularity in his AGC complaint, coupled with his inability at deposition

---

2. We do acknowledge that there was inflammatory material in those letters. We also think Farmer was ill-advised to undertake this entire investigation himself. But, that does not mean his actions were not privileged.

to point to any specific professional rule violations, exposes his real purpose to be to disparage Mixter's reputation in the legal community. We find this argument unpersuasive for two reasons: first, there is no requirement that an AGC complaint allege specific rule violations; and secondly, under Maryland law, even a meritless complaint is privileged and the complainant's motive is immaterial. *See Di Blasio v. Kolodner*, 233 Md. 512, 522, 197 A.2d 245 (1964) (stating that an absolute privilege "provides immunity regardless of the purpose or motive of the defendant, or the reasonableness of his conduct").

■ Mixter next contends that the trial court's ruling harms the public policy underlying absolute judicial privilege because it allows Farmer to disparage him continuously and without recourse. While we acknowledge that the AGC process potentially may allow defamation against a specific lawyer, this outcome is weighed against the greater need to protect the public from unethical lawyers. *See Woodruff v. Trepel*, 125 Md.App. 381, 391, 725 A.2d 612 (1999) (stating that we allow people in certain circumstances not to be held accountable for defamation because they are acting to further a greater interest of social importance). Because AGC complaints are not published and lawyers' exposure is protected to a reasonable degree, we are unwilling to overlook the absolute privilege accorded to the AGC process simply because appellant feels aggrieved in this situation.

■ Appellant also argues that the trial court erred when it did not find that malice defeated a conditional privilege for claims of defamation, libel, and slander. Because Farmer enjoyed an *absolute privilege* against claims for defamation, libel, and slander, and malice does not defeat the absolute privilege, we need not reach this issue.

Finally, appellant contends that, even if absolute privilege applies to the defamation torts, it does not apply to his intentional infliction of emotional distress, tortious interference with existing contracts, and tortious interference with prospective advantage claims. While there is no Maryland law specifically applying absolute privilege to intentional inflic-

tion of emotional distress, tortious interference with existing contracts, or tortious interference with prospective advantage, there is precedent for applying absolute privilege to torts beyond defamation when those other torts arise from the same conduct as the defamation claim.

In *Walker v. D'Alesandro*, the Court of Appeals stated that privilege was not limited to immunity from liability for defamation. 212 Md. 163, 169, 129 A.2d 148 (1957). The Court of Appeals reiterated this position in *Carr v. Watkins*, when it examined whether privilege could act as a shield for torts such as invasion of privacy and malicious interference with contract rights. 227 Md. 578, 582, 177 A.2d 841 (1962). *Carr* concluded that "if there was immunity from liability for defamation, there was immunity from liability for the other alleged torts claimed by the [plaintiff] to have been committed." *Id.* at 583, 177 A.2d 841.

The Supreme Court also recognizes that privilege is not confined to defamation torts when the same behavior is the subject of other torts. In *Barr v. Matteo*, the Supreme Court discussed the law of privilege as an absolute defense for federal officers in civil suits for defamation and "kindred torts." 360 U.S. 564, 569, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959). Moreover, in *Hustler Magazine, Inc. v. Falwell*, the Supreme Court held that the First Amendment privilege applies equally to libel and intentional infliction of emotional distress. 485 U.S. 46, 56, 108 S.Ct. 876, 99 L.Ed.2d 41 (1988). The Court's rationale for applying the First Amendment privilege equally to libel and intentional infliction of emotional distress suggests to us that absolute privilege would apply equally to those claims as well.[3]

Other courts also have used privilege to protect defendants from claims other than defamation that originated from the same acts. *See Sullivan v. Birmingham*, 11 Mass.App.Ct.

---

**3.** The Supreme Court recognized that in order to protect the important freedoms of the First Amendment, it was necessary to expand the privilege beyond libel to intentional infliction of emotional distress. *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 56, 108 S.Ct. 876, 99

359, 416 N.E.2d 528, 533 (1981) (holding that absolute privilege was a complete defense to intentional infliction of emotional distress); *see also Rainier's Dairies v. Raritan Val. Farms*, 19 N.J. 552, 117 A.2d 889, 895 (1955) (holding that absolute privilege was a complete defense to malicious interference with business).

In addition to case law in Maryland and other courts supporting the expansion of immunity beyond defamation torts when those other torts arise from the same conduct, a broad reading of absolute privilege makes sense from a policy perspective. The *Sullivan v. Birmingham* court noted that the policy behind the privilege "would be severely undercut if the absolute privilege were to be regarded as less than a bar to all actions arising out of the 'conduct of parties and/or witnesses in connection with a judicial proceeding.'" 416 N.E.2d at 534 (quoting *Devlin v. Greiner*, 147 N.J.Super. 446, 371 A.2d 380, 385 (Law Div.1977)). The court in *Thornton v. Rhoden* agreed that the policy reasons behind the absolute privilege would be defeated if claims beyond defamation were not protected. 245 Cal.App.2d 80, 99, 53 Cal.Rptr. 706 (1966). Thornton stated, "[i]f it is desirable to create an absolute privilege in defamation . . . we should not remove one concern and saddle him with another for doing precisely the same thing." *Id.* Nonetheless, because Maryland law is not settled, we will examine whether absent absolute privilege, appellant's complaint could survive summary judgment on the counts for intentional infliction of emotional distress, tortious interference with existing contracts, or tortious interference with prospective business.

## II.

A. Intentional infliction of emotional distress

 Intentional infliction of emotional distress requires the following elements: "1) the conduct must be intentional or

L.Ed.2d 41 (1988). Similarly, in order to protect the free access to the courts, it is necessary to expand the absolute judicial privilege beyond defamation to other torts.

reckless, 2) the conduct must be extreme and outrageous, 3) there must be a casual connection between the wrongful conduct and the emotional distress, and 4) the emotional distress must be severe." *Harris v. Jones,* 281 Md. 560, 566, 380 A.2d 611 (1977). The tort should be "used sparingly and only for opprobrious behavior that includes truly outrageous conduct." *Hines v. French,* 157 Md.App. 536, 558, 852 A.2d 1047 (2004) (quoting *Batson v. Shiflett,* 325 Md. 684, 734–35, 602 A.2d 1191 (1992)).

Conduct that is intentional or reckless occurs when the actor "desires to inflict severe emotional distress, and also where he knows that such distress is certain, or substantially certain, to result from his conduct; or where the defendant acts recklessly in deliberate disregard of a high degree of probability that the emotional distress will follow." *Harris,* 281 Md. at 567, 380 A.2d 611. While appellee clearly wanted to punish appellant for his conduct through the AGC, making a complaint alone does not give rise to a claim for severe emotional distress. If it did, no one would ever be likely to submit a complaint to the AGC. Although appellant points out that Farmer chose not to copy him on the complaint letter or the letters to other lawyers, because he knew appellant would be upset, that knowledge alone is insufficient to establish a claim for severe emotional distress. Thus, appellant's claim must fail.[4]

B. Tortious interference with contracts

A claim for tortious interference with contract requires that the defendant know of an existing contract and engage in improper conduct to induce a third party's breach of that contract. *Orfanos v. Athenian Inc.,* 66 Md.App. 507, 520–21, 505 A.2d 131 (1986). Appellant argues that appellee's communications with Mr. Hancock amount to tortious interfer-

---

4. Even though we do not feel it is necessary to examine fully whether appellant met the other elements of the tort, we note that the record demonstrates that Farmer's conduct was not extreme and outrageous, and any emotional distress that appellant suffered was not severe.

ence with one or more contracts. The trial court found that appellant could not identify any contract that was breached. We agree. Although appellant speculates that he may have lost contracts in the abstract,[5] appellant has not pointed to any specific lost contract or loss of business that he incurred as a result of Farmer's communications with Mr. Hancock. Moreover, appellee states in his letter that he believes Mr. Hancock fired appellant for unprofessional behavior. If the reason Farmer wrote to Mr. Hancock was to confirm that fact, he was not intending to interfere with an *existing* contract.

C. Tortious interference with prospective advantage

In order to sustain a claim for tortious interference with prospective advantage "plaintiffs must identify a possible future relationship which is likely to occur, absent the interference, with specificity." *Baron Fin. Corp. v. Natanzon,* 471 F.Supp.2d 535, 546 (D.Md.2006) (citing Maryland law). Once again, appellant has failed to identify a specific future relationship with Mr. Hancock that would have occurred absent Farmer's letter. Therefore, there can be no interference with prospective advantage.

Finally, appellant argues that the Circuit Court erred when it granted Bowie's motion for summary judgment on all of the same counts as to Farmer. Even assuming that Bowie collaborated with Farmer on the letters,[6] he also would enjoy absolute privilege for the defamation torts for all the same reasons that Farmer enjoyed the privilege. Similarly, appellant's claims of intentional infliction of emotional distress, tortious interference with existing contracts, and tortious interference with business advantage necessarily fail against Bowie for all of the same reasons that they failed with regard to Farmer. Because we find that appellees are either protect-

---

**5.** Mixter intended to have Hancock testify that he was more reluctant to send cases to him after Farmer contacted him. But this testimony would be too speculative to support a claim for tortious interference with contract.

**6.** It is unclear whether Bowie actually assisted Farmer with the letters.

**550**

ed by absolute privilege, or entitled to summary judgment on the remaining counts, we affirm.

**JUDGMENT AFFIRMED. COSTS TO BE PAID BY APPELLANT.**