Circuit Court for Baltimore County
03-C-14-011129

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 482

September Term, 2016

_____

GEORGE LINDENMUTH

v.

MICHAEL MCCREER

_____

Wright,
Berger,
Leahy,

JJ.

_____

Opinion by Berger, J.

_____

Filed:  July 26, 2017

This appeal arises out of a dispute between coworkers in a mechanic shop at Coca-Cola Enterprises ("CCE"). Appellant George Lindenmuth ("Lindenmuth") appeals the decision of the Circuit Court for Baltimore County to grant summary judgment in favor of appellee Michael McCreer ("McCreer") on all four counts of the complaint including (1) defamation; (2) invasion of privacy -- unreasonable publicity given to private life; (3) invasion of privacy -- placing a person in a false light; and (4) intentional infliction of emotional distress. The court initially denied McCreer's motion for summary judgment. Thereafter, McCreer filed a motion for reconsideration, and the circuit court held a hearing on McCreer's motion for reconsideration. After the hearing, during which the court established a number of undisputed material facts, the circuit court granted summary judgment in favor of McCreer on all counts of the complaint.

Lindenmuth presents primarily one issue on appeal, which we have rephrased as follows: Whether the circuit court erred in granting summary judgment in favor of McCreer on all four counts of the complaint. For the reasons discussed below, we affirm the circuit court's decision to grant summary judgment in favor of McCreer.

## FACTS AND PROCEDURAL HISTORY

In April of 2014, Lindenmuth was employed at CCE as a mechanic. McCreer was employed as the lead mechanic in the same CCE mechanic shop, with supervisory responsibilities over Lindenmuth's work. McCreer performed audits of the work of the mechanics and made work assignments, including to Lindenmuth. In April 2014, Lindenmuth's manager and supervisors brought several of Lindenmuth's mistakes to his attention. On April 9, 2014, Lindenmuth left work early. The next day, he returned to

work and spoke with his manager, Jimmy Young, who advised Lindenmuth to take time off from work due to his level of stress. Starting on April 10, 2014, Lindenmuth was on a leave of absence from work at CCE.

On May 2, 2014, Doug Anderson, another mechanic under McCreer's supervision in the same CCE mechanic shop, heard rumors from others in the shop that Lindenmuth was returning to work and that he had a permit to carry a concealed firearm. Later that day, Anderson told McCreer the rumor he heard about Lindenmuth returning to work, that he owned guns and had a license to carry a concealed handgun, and that he was concerned that Lindenmuth was going to shoot someone at work upon his return. It was common knowledge among employees within the mechanic shop that Lindenmuth owned firearms and that he had a license to carry a concealed firearm, which was issued in another state. Further, Lindenmuth was not concerned with whether others knew that he was a gun owner or that he had a concealed handgun permit.

McCreer asked Anderson the basis of Anderson's concerns about Lindenmuth. Anderson described a prior experience that occurred at a previous workplace during which a truck driver, who had been fired, came back to the workplace, said hello to Anderson, and then went into the supervisor's office and shot the supervisor before shooting himself. McCreer asked Anderson whether he wanted to tell CCE management about his concerns directly or whether McCreer should relay Anderson's concerns to management on his behalf. Anderson asked McCreer to talk to management and convey his concerns.

After his conversation with Anderson, McCreer went to CCE Manager, Jimmy Young ("Young"), and relayed Anderson's concerns. The concerns that McCreer repeated

2

to Young for Anderson were that (1) Lindenmuth was returning to work; (2) Lindenmuth had guns; (3) that Lindenmuth had a permit to carry a concealed weapon; and (4) Lindenmuth was going to shoot someone at work. Following McCreer's conversation with Young, Young called the police and a police officer came to CCE and questioned several employees in the mechanic shop about Lindenmuth. In response to the officer's questions, McCreer and others described prior conversations or incidents in which they alleged that Lindenmuth had described wanting to commit violent acts, including shooting police officers. Thereafter, Lindenmuth returned to CCE and saw that his photo had been placed in the guard shack with a note indicating that Lindenmuth was not allowed into the facility.

On November 14, 2014, Lindenmuth filed his First Amended Complaint against McCreer for defamation, invasion of privacy -- unreasonable publicity given to private life, invasion of privacy -- false light, and intentional infliction of emotional distress. McCreer filed a motion to dismiss for failure to state a claim upon which relief can be granted, which the circuit court denied. After discovery, McCreer filed a motion for summary judgment on October 15, 2015. The circuit court denied the motion on January 13, 2016. McCreer filed a motion for reconsideration on January 22, 2016. On March 29, 2016, the circuit court held a hearing on the motion, during which the court confirmed its understanding of Lindenmuth's allegations on each count of the complaint, what facts remained in dispute, and reviewed the arguments in the parties' memoranda and accompanying attachments. On April 12, 2016, the circuit court granted summary judgment in favor of McCreer. Thereafter, Lindenmuth filed a timely appeal to this Court.

3

# DISCUSSION

## I.      Standard of Review

We review a circuit court's decision to grant summary judgment to determine whether the court was correct as a matter of law, "because the trial court decides issues of law, and not disputes of fact," when considering a motion for summary judgment. *Piscatelli v. Van Smith*, 424 Md. 294 (2012) (citing *Rosenberg v. Helinski*, 328 Md. 664 (1992)).  Our review of a circuit court's grant of summary judgment is *de novo.  See Torbit v. Baltimore City Police Dep't*, 231 Md. App. 573, 586 (2017) (citing *Roy v. Dackman*, 445 Md. 23, 39 (2015)); *see also* ("Our review over a circuit court's decision on summary judgment is plenary.") (citing *Hemmings v. Pelham Wood Ltd. Liab. P'ship*, 375 Md. 522, 533 (2003)).

Maryland Rule 2-501, governing the circuit court's issuance of summary judgment, provides, "[a]ny party may file a written motion for summary judgment on all or part of an action on the ground that there is no genuine dispute as to any material fact and that the party is entitled to judgment as a matter of law."  As Chief Judge Bell explained,

> The party opposing a motion for summary judgment must produce admissible evidence to show that a genuine dispute of material fact, i.e., one "the resolution of which will somehow affect the outcome of the case," . . . does exist . . . . This requires more than "general allegations which do not show facts in detail and with precision."

*Rite Aid Corp. v. Hagley*, 374 Md. 665, 684 (2003) (citations omitted).   Where "a reasonable dispute over a material fact" exists, summary judgment is not appropriate; however, "where no material fact presented is in dispute, summary judgment is appropriate

4

to resolve purely legal questions." *Carter*, *supra*, 153 Md. App. at 225 (citing *Sterling v. Johns Hopkins Hospital,* 145 Md. App. 161, 168 (2002)).

We note that summary judgment is typically inappropriate in a defamation case. *See Carter*, *supra*, 153 Md. App. 210, 225 (2003) (citing *Hagley*, *supra*, 374 Md. 665, 684 (2003)). "Nevertheless, this disposition may properly obtain if the prerequisites for summary judgment are satisfied, to wit: the absence of a disputed issue of material fact and the presence of a legal basis for the entry of judgment." *Carter*, *supra*, 153 Md. App. at 226 (citing *Hagley, supra*, 374 Md. at 685).

## II. The Circuit Court Did Not Err in Granting Summary Judgment in Favor of McCreer on All Counts of the Complaint.

Lindenmuth argues that, at the hearing on the motion for reconsideration, the court "would only consider facts from the complaint and from Defendant" and that the court "refused to acknowledge or consider any of the material" or the "facts or inferences put into Plaintiff's response to Defendant's motion." Among these facts ignored by the court, Lindenmuth argues, were disputes of material fact. On appeal, Lindenmuth points primarily to his assertion that the parties had an "acrimonious relationship" as a material fact in dispute that the court did not consider. Lindenmuth refers to the hearing transcript and his papers filed before the circuit court as additional sources for this Court to find issues of material facts that, he contends, are in dispute.

In Lindenmuth's response to McCreer's motion for summary judgment, Lindenmuth points to the parties' "acrimonious relationship" as evidence that McCreer's statements to management could have been motivated by reasons other than safety

5

concerns. As support for this same assertion, Lindenmuth refers to (1) an email from McCreer to management sent prior to McCreer's May 2, 2014 statements in which he claimed that Lindenmuth had made a violent threat towards him; (2) notes taken by McCreer in which he had critiqued Lindenmuth's work; and (3) his allegation that McCreer did not report other comments made by Lindenmuth about police officers.

Further, Lindenmuth argued in his response to McCreer's motion for reconsideration that another factual dispute existed over whether Lindenmuth had actually made statements regarding shooting police officers. Lindenmuth presented the following rationale that this dispute was material: "If those comments are true and undisputed as the Defendant argues, then the inference that Plaintiff had a desire and history of violent speech would bolster the argument for conditional privilege -- a defense in this case." Finally, Lindenmuth argued in his response that McCreer's email to management contradicted a statement he made during his deposition that he did not know that Lindenmuth had spoken to management on the day he left work early.

Lindenmuth's argument fails, however, because the circuit court was required to consider only the *material* facts—i.e. facts that could somehow affect the outcome of the case. For this reason, the circuit court painstakingly sorted through the material facts, as well as some immaterial facts, to determine what was in dispute.[1] For each fact asserted

---

[1] During the March 29, 2016 hearing on the motion for reconsideration, the circuit court explained preliminarily that "there was no clear, concise statement of material facts in the motion for summary judgment," but that the court was "happy to hear from [Counsel for McCreer] what your first material fact is that you contend is not in dispute on which your motion is based." The court continued, "We'll go fact by fact so that I can be clear

by McCreer as a basis to grant summary judgment in his favor, the court inquired into whether the fact was disputed. Further, the trial court's inquiries paralleled the required elements of each count of the complaint as well as the defenses asserted in this case. The circuit court's task was to determine, based upon the undisputed material facts, and viewing all reasonable inferences from those facts in the light most favorable to Lindenmuth as the nonmoving party, whether McCreer was entitled to judgment as a matter of law.

Lindenmuth's argument on appeal that the circuit court failed to consider certain facts that he put forward overlooks the immateriality of the facts the court excluded from the basis of its opinion. We focus, first, on Lindenmuth's allegation of defamation and whether McCreer was entitled to judgment as a matter of law based on a conditional privilege. All four counts of the complaint, however, flow out of the same alleged conduct.

**A. The Circuit Court was Correct as a Matter of Law in Granting Summary Judgment in Favor of McCreer on Count I: Defamation.**

In his First Amended Complaint, Lindenmuth alleged that "[o]n or about May 2, 2014, Defendant reported to the management that he heard a rumor from another employee that Plaintiff owned guns and therefore concluded that Plaintiff was a threat to the workplace." Lindenmuth conceded in the complaint, however, that he "does own shotguns, rifles and handguns, which were all legally purchased" and that he has a permit for the firearms from another state.

what you contend is material, and I'll find out from Miss Ponczak whether or not a particular fact or inference is disputed." Indeed, the circuit court proceeded to note every undisputed material fact pertinent to the elements of each of the four counts of Lindenmuth's complaint.

7

On the count of defamation, specifically, Lindenmuth alleged that "[i]n [McCreer's] statements to the management and employees[2] regarding the rumor that Plaintiff may shoot at the facility, Defendant knowingly made the aforementioned false and defamatory statements about Plaintiff Lindenmuth."[3] Next, Lindenmuth alleged, "McCreer acted with knowledge of this falsity of the statements and with the intent to harm Plaintiff Lindenmuth's chances to return to work at Coca Cola when verbally publishing these false and defamatory statements about Plaintiff Lindenmuth." Thereafter, Lindenmuth asserted that his reputation and character were harmed as well as his standing in the community, and that he had suffered mental anguish, personal humiliation, and was "forced to leave his position as a mechanic at Coca Cola and take a lesser paying job with another company" as a result of McCreer's actions.

In sum, Lindenmuth's defamation claim is based on McCreer's statement to his manager, Young, during which McCreer relayed the statements and concerns of his subordinate mechanic, Anderson. More specifically, the crux of the cause of action for defamation concerns Anderson hearing a rumor that Lindenmuth was returning to work,

---

[2] Although Lindenmuth included among the facts alleged in his First Amended Complaint that McCreer "told [a police officer] about another possible rumor regarding Plaintiff that Plaintiff had made statements about shooting police officers," the circuit court confirmed during the hearing on the motion for reconsideration that these statements to the police officer were not a part of the allegedly defamatory statements. Lindenmuth argued, rather, that McCreer's answers to police questioning are evidence that McCreer's allegedly defamatory statements to management regarding Anderson's concerns were not motivated by a common interest in the safety of the workplace.

[3] Lindenmuth alleged further, "[i]n the alternative, Defendant McCreer negligently made the aforementioned false and defamatory statements about Plaintiff Lindenmuth."

8

that Lindenmuth owned a handgun and possessed a permit to carry a gun, and that Anderson was concerned that Lindenmuth might shoot someone at work.

Four elements must be present for a plaintiff to establish a *prima facie* case of defamation, including that: "(1) . . . the defendant made a defamatory statement to a third person, (2) . . . the statement was false, (3) . . . the defendant was legally at fault in making the statement, and (4) . . . the plaintiff suffered harm." *Hosmane v. Seley-Radtke*, 227 Md. App. 11, 20–21 (2016) (citing *Offen v. Brenner,* 402 Md. 191, 198 (2007)), *aff'd*, 450 Md. 468 (2016). We have defined the substantive requirements of a defamatory statement in the following way:

> A defamatory statement is one "which tends to expose a person to public scorn, hatred, contempt or ridicule, thereby discouraging others in the community from having a good opinion of, or from associating or dealing with, that person." *Batson v. Shiflett,* 325 Md. 684, 722–23, 602 A.2d 1191, 1210 (1992). A false statement is one that is not substantially correct. *Id.* at 726, 602 A.2d at 1212. [ . . . ] Whether a publication is defamatory is a question of law for the court.

*Id.* at 21; *see also Piscatelli*, *supra*, 424 Md. at 307. It is the plaintiff's burden to prove that the statement was false. *See Piscatelli*, *supra*, 424 Md. at 307 (citing *Batson*, *supra*, 325 Md. at 726.

Where a plaintiff can establish a *prima facie* case of defamation, the defendant bears the burden of proving that a privilege existed at the time of the statement in order to escape

liability.[4]  *Id.*  A privilege is a "circumstance[] in which a person will not be held liable for a defamatory statement because the person is acting 'in furtherance of some interest of social importance, which is entitled protection.'"  *Woodruff v. Trepel*, 125 Md. App. 381, 391 (1999), *cert. denied*, 354 Md. 332 (1999) (quoting W. Page Keeton et al., PROSSER AND KEETON ON TORTS § 114, 815 (5th ed. 1984); *see also Gohari v. Darvish*, 363 Md. 42, 55 (2001).  A privilege may be either absolute or qualified.[5]  A qualified, or "conditional,"[6] privilege may "defeat[] a claim of defamation, if the defendant did not abuse that privilege."  *Piscatelli*, *supra*, 424 Md. at 307 (citing *Hanrahan v. Kelly,* 269 Md. 21, 29–30 (1973)).

In *Piscatelli*, the Court of Appeals explained,

> [w]here a defendant asserts a privilege in a motion for summary judgment in a defamation action, we consider first whether the asserted privilege applies. *See* [*Rosenberg*, *supra*, 328 Md. at 675–76]; *Orrison v. Vance*, 262 Md. 285, 292–93, 277 A.2d 573, 576 (1971); *Peroutka v. Streng*, 116 Md. App. 301, 312, 695 A.2d 1287, 1293 (1997). Thus, we assume that the plaintiff's allegations of defamation are true for purposes of evaluating whether the privilege exists. *Rosenberg*, 328 Md. at 675–76, 616 A.2d at 871–72; *Orrison*, 262 Md. at 292–93, 277 A.2d at 576; *Peroutka*, 116 Md. App. at 312, 695 A.2d at 1293.

---

[4]  Alternatively, or simultaneously, the Defendant may dispute particular elements of the defamation claim -- e.g. the defendant may claim that the statement was true. *See Piscatelli*, 424 Md. at 307 (defining the elements of a *prima facie* case of defamation).

[5]  An absolute privilege is one which provides complete immunity. *Gohari*, *supra*, 363 Md. at 55 n. 13.  Unlike a qualified privilege, a plaintiff may not overcome a defendant's absolute privilege by establishing that a defamatory statement was made with actual malice. *Id.* at 55 (citations omitted).

[6]  We use the terms "qualified privilege" and "conditional privilege" interchangeably.

10

424 Md. at 306–07.

> The Court of Appeals has recognized four common law qualified privileges:
>
> > (1) The public interest privilege, to publish materials to public officials on matters within their public responsibility; (2) **the privilege to publish to someone who shares a common interest, or, relatedly, to publish in defense of oneself or in the interest of others**; (3) the fair comment privilege; and (4) the privilege to make a fair and accurate report of public proceedings.

*Gohari*, *supra*, 363 Md. at 57 (quoting Dan B. Dobbs, THE LAW OF TORTS, § 413, 1158 (2000) ("THE LAW OF TORTS")) (emphasis added). Regarding what is broadly termed the "common interest" privilege, the policy underlying the common law was that a person should not be held liable for defamation where that person, "in good faith, . . . publishes a statement in furtherance of his own legitimate interests, or those shared in common with the recipient or third parties." *Marchesi v. Franchino*, 283 Md. 131, 135-36 (1978). Quoting from THE LAW OF TORTS, *supra*, § 414 at 1160-61, the Court of Appeals has explained,

> > Common interests are usually found among members of identifiable groups in which members share similar goals or values or cooperate in a single endeavor . . . . The idea is to promote free exchange of relevant information among those engaged in a common enterprise or activity and to permit them to make appropriate internal communications and share consultations without fear of suit . . . .

*Gohari*, *supra,* 363 Md. at 58.

Notably, where there is no dispute of material fact regarding the common interest or duty giving rise to the statement, "[t]he determination of whether a privilege existed is made as a matter of law." *Carter*, *supra*, 153 Md. App. at 242 (citing *Sindorf v. Jacron*

11

*Sales Co.,* 27 Md. App. 53, 69 (1975)); *see also Bagwell v. Peninsula Reg'l Med. Ctr.*, 106 Md. App. 470, 512 (1995) (citing *Exxon Corp. v. Schoene*, 67 Md. App. 412, 421 (1986)) ("The question of whether a defamatory communication enjoys a qualified privilege is a matter of law for the court.").

As we noted in *Carter*, *supra*, however, even where a defendant can establish that a qualified privilege existed, the defendant may forfeit his or her privilege by abuse, such as in the following circumstances:

> (1) the publication is made with malice, that is, with "knowledge of falsity or reckless disregard for truth . . ." [;] (2) the statement was not made in furtherance of the interest for which the privilege exists . . . ; (3) the statement is made to a third person other than one "whose hearing is reasonably believed to be necessary or useful to the protection of the interest . . . "[;] and (4) the statement includes defamatory matter not reasonably believed to be in line with the purpose for which the privilege was granted.

153 Md. App. at 242-43 (quoting *Happy 40, Inc. v. Miller,* 63 Md. App. 24, 32-33 (1985)).

The standard for "malice" to overcome a defendant's privilege is "actual malice," sometimes referred to as "constitutional malice." *Bagwell*, *supra*, 470 Md. App. at 512 (citing *Batson*, *supra*, 325 Md. at 728). On numerous occasions the Court of Appeals has articulated the Court's preference for a "stringent standard of malice" to defeat a qualified privilege, requiring a plaintiff to show that the defendant acted with a "reckless disregard as to truth or falsity" of the statement. *Marchesi*, *supra*, 283 at 134-35. In *Ellerin v. Fairfax Sav. F.S.B.*, the Court of Appeals defined the standard for malice as "a person's *actual knowledge* that his [or her] statement is false, coupled with his [or her] *intent to deceive another* by means of that statement." 337 Md. 216, 240 (1995) (emphasis added)

(alterations in original).  To distinguish the meaning of actual malice, we have previously

explained that it is not enough to show that the alleged defamatory statement

> was erroneous, derogatory or untrue; the publisher acted out of ill will, hatred or a desire to injure . . . ; the publisher acted negligently; the publisher acted in reliance on the unverified statement of a third party without personal knowledge of the subject matter of the defamatory subject; or the publisher acted without undertaking the investigation that would have been made by a reasonably prudent person. . . . Malice is not established if there is evidence to show that the publisher acted on a reasonable belief that the defamatory material was "substantially correct" and "there was no evidence to impeach the [publisher's] good faith."

*Bagwell*, *supra*, 106 Md. App. at 512–13 (citations omitted).

Although the issue of abuse of a qualified privilege is typically reserved for the

finder of fact, "the plaintiff must produce facts, admissible in evidence, demonstrating the

defendant abused the privilege, in order to generate a triable issue for the fact-finder."

*Piscatelli*, *supra*, 424 Md. at 307 (citing *Hanrahan*, *supra*, 269 Md. at 29).  In other words,

the issue of malice "need not be submitted to the fact-finder when the plaintiff fails to

allege or prove facts that would support a finding of malice."  *Id.* at 308; *see also Woodruff*,

*supra,* 125 Md. App. at 402 (citations omitted) ("Once a judge determines that a privilege

exists, the question of whether the privilege was abused is for the jury, subject to the

censorial power of the judge where there is no evidence of malice, and the burden on the

issue is on the plaintiff.").

We note, first, that Lindenmuth failed to demonstrate that McCreer's statements

were false, an element of a plaintiff's *prima facie* case of defamation.  *See Gohari*, *supra,*

363 Md. at 54 (quoting *Rosenberg*, *supra*, 328 Md. at 675) (stating the elements of

13

defamation). As the circuit court explained, the undisputed facts demonstrate that McCreer "accurately relayed to [his] supervisor what the [party's] co-worker said to [McCreer] about [Lindenmuth]. Thus, [Lindenmuth] has not shown that [McCreer's] statements were false." We agree with the circuit court that the parties did not dispute whether Anderson was concerned about Lindenmuth coming to the workplace to shoot someone, or whether Anderson told McCreer about his concerns. Indeed, Lindenmuth could point to no evidence that would have contradicted these facts as stated in McCreer's deposition testimony and in Anderson's affidavit. Without any evidence to establish that McCreer's statements were "not substantially correct," *Hosmane*, *supra*, 227 Md. App. at 21, Lindenmuth did not meet his burden of proof.

Assuming *arguendo* that Lindenmuth could have established all four primary elements of a *prima facie* case of defamation, McCreer would not be liable if he established that a conditional privilege applied. The circuit court's analysis of Lindenmuth's defamation claim focused primarily on this stage of the analysis -- whether the undisputed facts established that McCreer's statements were subject to a qualified privilege. The court found that a conditional privilege applied to McCreer's statements. Pursuant to *Gohari*, *supra,* 636 Md. at 57, the court found that McCreer's statements to his manager were protected by a common interest privilege as McCreer's statements "were made in furtherance of the common interests shared among the Defendant, Young, and other employees." The court explained that "[t]he communication between Defendant and Young arose out of the employer-employee relationship, between people engaged in a

14

common enterprise or activity." *See Gohari*, *supra,* 636 Md. at 58 (defining the conditional privilege based on a common interest).

As we explained *supra*, the determination of whether a conditional privilege applies to shield a person's statements from liability for defamation is a question of law for the court to determine. *See Bagwell*, *supra,* 106 Md. App. at 512 (citations omitted). As we have explained, McCreer was Anderson's supervisor to whom Anderson had expressed concerns and asked to discuss those concerns with management on his behalf. An employee such as McCreer, particularly in a supervisory role, has an interest in the safety of other employees as well as himself. Moreover, McCreer shared this common interest with Young, the third-party to whom McCreer published the statements at issue. We agree with the circuit court, therefore, that McCreer established, based on the undisputed material facts, that his statements were protected by a conditional privilege based on a common interest.

The final issue related to Lindenmuth's defamation claim was whether McCreer abused the qualified privilege, thereby waiving any protection from liability. To demonstrate that defendant abused his or her privilege, the plaintiff must establish that the defendant made the statement with actual malice -- i.e. with "knowledge of falsity or reckless disregard for truth." *Marchesi*, *supra,* 283 Md. at 139. Furthermore, a plaintiff may provide evidence that the defendant did not make the statement "in furtherance of the interest for which the privilege exists." *Happy 40, Inc.*, *supra,* 63 Md. App. at 33. As we have explained above, however, it is not enough to demonstrate that the defendant "acted out of ill will, hatred or a desire to injure," "acted negligently," "acted in reliance on the

15

unverified statement of a third party without personal knowledge of the subject matter of the defamation subject," or "acted without undertaking the investigation that would have been made by a reasonably prudent person." *Bagwell*, *supra,* 106 Md. App. at 513 (citing *Capital-Gazette Newspapers, Inc. v. Stack*, 293 Md. 528, 539-40 (1982)). Moreover, actual malice is not established where evidence shows the defendant "acted on a reasonable belief that the defamatory material was 'substantially correct' and 'there was no evidence to impeach the [publisher's] good faith.'" *Id.*

Once the conditional privilege is found to apply, the burden shifts to Lindenmuth to establish that McCreer abused the conditional privilege. *Shirley v. Heckman*, 214 Md. 34, 44 (2013); *see also Piscatelli*, *supra,* 424 Md. at 307 (citing *Hanrahan*, *supra,* 269 Md. at 29). Lindenmuth, however, was able to point only to evidence that McCreer had previously documented problems with Lindenmuth's work in the mechanic shop through McCreer's handwritten notes over a period of three years, that McCreer audited Lindenmuth's work more often than other mechanics, and that McCreer sent an email prior to May 2, 2014 to management claiming that Lindenmuth had previously threatened him. Based on these facts, among others, Lindenmuth argued that McCreer and Lindenmuth maintained a tense or "acrimonious relationship" while working together in the mechanic shop.

As the circuit court properly found, however, the parties' contentious relationship, alone, could not establish that McCreer made the statements to management with actual malice or that he did not make the statements in furtherance of the protected privilege. Lindenmuth failed to establish that McCreer repeated the concerns to management with knowledge of falsity or reckless disregard for the truth of the concerns he conveyed. Even

16

concrete evidence that McCreer harbored ill will or hatred toward Lindenmuth would not have established an abuse of privilege where Lindenmuth could not proffer any evidence to impugn McCreer's good faith belief in the accuracy of his statements. *See Bagwell*, *supra,* 106 Md. App. at 513. Accordingly, we hold that the circuit court did not err when it granted summary judgment in favor of McCreer on the count of defamation.

**B. The Circuit Court was Correct as a Matter of Law in Granting Summary Judgment in Favor of McCreer on Count II: Invasion of Privacy -- Unreasonable Publicity Given to Private Life.**

Regarding Count II of Lindenmuth's First Amended Complaint, Lindenmuth avers that, based on the same conduct from which the claim of defamation arose, McCreer is liable for the tort of invasion of privacy -- unreasonable publicity given to private life. Under Maryland law, this invasion of privacy tort is cognizable where one "gives publicity to a matter concerning the private life of another" and "the matter publicized is of a kind which (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public." *Furman v. Sheppard*, 130 Md. App. 67, 77 (2000) (citing *Klipa v. Bd. of Educ. of Anne Arundel Cnty.*, 54 Md. App. 644, 654-55 (1983)). Two critical elements of an "unreasonable publicity given to private life" claim are (1) disclosure of a "private fact," and (2) the defendant made the private fact "public" in disclosing it. *See Pemberton v. Bethlehem Steel Corp.*, 66 Md. App. 133, 166 (1986) (citations omitted).

To make "public," or to "publicize," a private fact requires publication to the public at large. *See Furman*, *supra*, 130 Md. App. at 78 (citing *Pemberton*, *supra*, 66 Md. App. at 166). "It is not an invasion of the right of privacy . . . to communicate a fact concerning the plaintiff's private life to a single person or even to a small group of persons." *Id.; see*

17

*also* RESTATEMENT (SECOND) OF TORTS, § 652D, cmt. a. Indeed, a defendant is not liable for the tort of unreasonable publicity given to private life where "the defendant merely gives further publicity to information about the plaintiff that is already public." *Pemberton*, *supra*, 66 Md. App. at 168 (citing RESTATEMENT (SECOND) OF TORTS, § 652D, cmt. b).

Regarding the substance of the "private fact," the information disclosed must be **private**. *See Pemberton*, *supra*, 66 Md. App. at 167 (citing RESTATEMENT (SECOND) OF TORTS, § 652D, cmt. b) ("There is simply no liability when the defendant merely gives further publicity to information about the plaintiff that is already public."). Critically, even where the matter publicized is of a private nature, the information disclosed must be "highly offensive to a reasonable person" and "not of legitimate concern to the public." *Furman*, *supra*, 130 Md. App. at 77.

In this case, Lindenmuth alleged that McCreer told management and other employees that (1) Anderson had heard a rumor that Lindenmuth was returning to work from a period of time on leave; (2) Lindenmuth owned guns and had a permit to carry guns; and (3) that he might use those guns to shoot at people at work. As a result, Lindenmuth argued, Lindenmuth's picture was posted in the work station of the guards informing them not to let Lindenmuth into the building. Even without considering the undisputed fact that McCreer made the statements to his manager on behalf of a subordinate mechanic, Lindenmuth could not establish the basic requirements that the disclosures concern a "private fact" and that the defendant "publicized" those private facts.

The circuit court based its decision that McCreer was entitled to judgment as a matter of law on the undisputed facts that McCreer "communicated Doug Anderson's

18

concerns (that Plaintiff owned guns, Plaintiff had a conceal-carry permit, Plaintiff was returning to work, and that Anderson was concerned that Plaintiff would shoot someone at work) to manager Jimmy Young at Doug Anderson's request."

Regarding Lindenmuth's gun ownership, as the circuit court explained, Lindenmuth was not concerned with whether people knew that he owned guns or had a permit to carry guns. Indeed, Lindenmuth conceded that his coworkers in the mechanic shop were already aware of Lindenmuth's ownership of guns and his gun permit. Based on these undisputed facts, therefore, information pertaining to Lindenmuth's gun ownership did not constitute a "private fact." Second, the fact that Lindenmuth was going to return to work from a period of time on leave is not a private fact, as it is expected that an employee on temporary leave will eventually return. Finally, the statement concerning Lindenmuth's potential to bring a gun to the mechanic shop was not a private fact, but rather, an opinion or concern.

Even if Lindenmuth could have established that McCreer's statements concerned a private fact that was not already in the public domain, Lindenmuth alleged only that McCreer disclosed the information and concerns to his manager, or at most, to other employees in the mechanic shop. As we explained in *Furman*, *supra*, publicizing a private fact requires more than merely disclosing information "to a single person or even to a small group of persons." 130 Md. App. at 78. McCreer was, therefore, entitled to judgment as a matter of law on Lindenmuth's claim of invasion of privacy -- unreasonable publicity given to private life.

19

**C. The Circuit Court was Correct as a Matter of Law in Granting Summary Judgment in Favor of McCreer on Count III: Invasion of Privacy -- False Light.**

Next, Lindenmuth alleged that McCreer is liable for the tort of invasion of privacy -- placing a person in a false light. Lindenmuth's claims are based on substantially the same conduct as Lindenmuth's claim for invasion of privacy -- unreasonable publicity given to private life. Lindenmuth emphasized his allegations under Count III, however, that McCreer knew that Lindenmuth was not a threat to the workplace when he made the statements to management, and that McCreer "knew that the facts publicized about the private life of Plaintiff were false, or stated them with reckless disregard for the truth of those facts."

We provided in *Bagwell*, *supra*, the following definition of the tort of false light invasion of privacy:

> [G]iving publicity to a matter concerning another that places the other before the public in a false light . . . if (a) the false light in which the other person was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

106 Md. App. at 470, 513-14 (citing RESTATEMENT (SECOND) OF TORTS, § 652E).

Similar to the tort of invasion of privacy -- unreasonable publicity given to private life, in order to be held liable for false light invasion of privacy, the defendant must make a *public* disclosure. *Furman*, *supra*, 130 Md. at 77. Moreover, as is true on a claim of defamation, the statement concerning the plaintiff must be false. *Bagwell*, *supra*, 106 Md. App. at 514 (citations omitted) ("[A] defendant in a false light case is entitled to judgment

20

as a matter of law, . . . where the statement is true."). Additionally, a qualified privilege that would shield a defendant from liability for defamation applies equally to a claim of false light invasion of privacy. *See id* at 514 (citing *Steer v. Lexleon, Inc.*, 58 Md. App. 199 (1984)).

As we have already explained with respect to Lindenmuth's claim of defamation, Lindenmuth failed to point to any evidence that McCreer's statements to his manager were false, as it was not disputed that McCreer informed Young of Anderson's concerns or that he relayed these concerns accurately. Also similar to our analysis of Lindenmuth's defamation claim, Lindenmuth failed to provide any evidence that McCreer acted with actual malice -- i.e. knowledge of falsity or reckless disregard for the truth. Finally, as we explained *supra*, McCreer's publication to Young, his manager, or even to coworkers in the mechanic shop, does not constitute "publicity." For all of these reasons, McCreer was entitled to judgment as a matter of law on the claim of false light invasion of privacy.

> **D.** **The Circuit Court was Correct as a Matter of Law in Granting Summary Judgment in Favor of McCreer on Count IV: Intentional Infliction of Emotional Distress.**

Finally, Lindenmuth contends that McCreer is liable for intentional infliction of emotional distress ("IIED") based on the same conduct as the previous three counts. We explained in *Lasater v. Guttmann* that

> [t]he elements of the tort of intentional infliction of emotional distress ("IIED"), first recognized in Maryland in *Harris v. Jones,* 281 Md. 560, 566, 380 A.2d 611 (1977), are: (1) The conduct must be intentional or reckless; (2) The conduct must be extreme and outrageous; (3) There must be a causal connection between the wrongful conduct and the emotional distress; [and] (4) The emotional distress must be severe.

21

194 Md. App. 431, 448 (2010) (quotations omitted); *see also* RESTATEMENT (SECOND) OF TORTS, § 46 (providing that the defendant must have "by extreme and outrageous conduct intentionally or recklessly cause[d] severe emotional distress to [the plaintiff] or recklessly cause[d] severe emotional distress").

We have previously explained that "[t]he tort should be 'used sparingly and only for opprobrious behavior that includes truly outrageous conduct.'" *Mixter v. Farmer*, 215 Md. App. 536, 548 (2013) (quoting *Hines v. French*, 157 Md. App. 536, 558 (2004)). The Court of Appeals in *Batson, supra,* explained that the "high standard of culpability exists to screen out claims amounting to 'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities' that simply must be endured as part of life.'" 325 Md. at 734 (quoting *Harris, supra,* 281 Md. at 567). Additionally, even where the plaintiff can establish a *prima facie* case of IIED, the conduct "may be privileged under the circumstances." *See* RESTATEMENT (SECOND) OF TORTS, § 46 cmt. g; *see also Mixter*, *supra,* 215 Md. App. at 545-46.

Pertinent to this case is whether the conduct alleged was "extreme and outrageous," which is a determination that is to be made by the court. *Batson*, *supra*, 325 Md. at 734; *see also Lasater*, *supra*, 194 Md. App. at 448 (reiterating that the test of extreme and outrageous behavior is "for the court to determine"). The Court of Appeals, in *Batson*, *supra,* emphasized that the plaintiff carries a particularly difficult burden in this regard. 325 Md. at 734. To meet the test of "outrageousness," the conduct "must be so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Pemberton, supra*, 66 Md. App. at 160

22

(citations omitted); *see also Batson*, *supra,* 325 Md. at 733-34 (quoting *Harris, supra,* 281 Md. at 567).

In this case, the circuit court found that the conduct alleged did not meet the test for "extreme and outrageous" conduct -- a necessary element of Lindenmuth's *prima facie* case for IIED. The basis of the court's decision was that Lindenmuth had conceded through counsel at the March 29, 2016 hearing that McCreer was not under a duty to conceal Anderson's concerns from management -- although taking issue with the way in which McCreer disclosed the information. The following exchanges between the court and counsel for Lindenmuth illustrate the concession at issue:

> THE COURT: All right. So your position is that Mr. McCreer should have just kept what Mr. Anderson told him a secret?
>
> . . .
>
> [COUNSEL FOR LINDENMUTH]: No. I don't think he should have kept it a secret. . . . I think there are ways to frame it . . . .
>
> THE COURT: So you don't contend Mr. McCreer should have kept Mr. Anderson's comments a secret? You don't say that, shouldn't have said he shouldn't have kept his mouth shut. That's not your position?
>
> [COUNSEL FOR LINDENMUTH]: I think that he should have sort of researched whether there was any merit to what Mr. Anderson was saying, the rumors that Mr. Anderson was basing things on --
>
> THE COURT: So the Defendant, Mr. McCreer, a lead mechanic, the lead mechanic should investigate.
>
> [COUNSEL FOR LINDENMUTH]: Not maybe that strong a word, but have gone to management and maybe framed it in a different way other than the rumor is he's coming back to work

23

and he has guns, and he's going to shoot at the workplace. That sets into motion a series of things --

THE COURT: So Mr. McCreer should have -- it's okay that he went to management, but he should have framed what Mr. Anderson said using words different from the words that Mr. Anderson used.

[COUNSEL FOR LINDENMUTH]: Right. . . .

Based primarily on Lindenmuth's concession that his claim for intentional infliction of emotional distress was not based on an assertion that McCreer should not have gone to management with Anderson's concerns, the circuit court found that McCreer's act of disclosing the information could not, as a matter of law, constitute "extreme and outrageous" conduct. We agree. We note, however, that even without Lindenmuth's apparent concession at the March 29, 2016 hearing, Lindenmuth failed to establish that McCreer's act of repeating his subordinate mechanic's concerns to his manager -- an act which was subject to a common interest qualified privilege as a matter of law -- was "extreme and outrageous" conduct.

Critically, in determining that McCreer was entitled to judgment as a matter of law on the count of defamation, we have already determined that McCreer's disclosures to his manager regarding Anderson's concerns were protected by a qualified privilege based on a common interest. Moreover, Lindenmuth did not provide any material facts that could establish that McCreer abused his common interest qualified privilege in relaying Anderson's concerns to his manager. To be shielded from liability for defamation by a qualified privilege, however, the defendant must have "act[ed] in furtherance of some

24

interest . . . which is entitled protection," *Woodruff*, *supra*, 125 Md. App. at 391 (citations omitted), and not abuse the privilege.  *See Piscatelli*, *supra*, 424 Md. at 307.

We note that, although there is no Maryland case that is specific to whether a qualified privilege applies equally to shield a defendant from liability for both defamation and IIED claims, the fact that McCreer's statements were protected by a qualified privilege in this case indicates that his actions were not "extreme and outrageous."  Both the defamation claim and the IIED claim arise out of the same conduct -- i.e. McCreer's disclosures to his manager regarding Anderson's concerns that Lindenmuth was returning to work, owned guns, possessed a concealed carry permit, and could use a firearm at the workplace.  Whether a defendant is protected by a qualified privilege is a matter of law to be determined by the court based upon the undisputed facts. *See Piscatelli*, *supra*, 424 Md. at 307-08. In this case, the question of whether McCreer abused his qualified privilege can be determined as a matter of law, because Lindenmuth failed to proffer any evidence of abuse based on malice or some other reason for waiving the qualified privilege.  *See Bagwell*, *supra*, 106 Md. App. at 512.  Finally, whether a defendant's conduct is "extreme and outrageous" is a matter for the court to decide as a matter of law. *See Lasater*, *supra*, 194 Md. App. at 448 (citing *Batson*, *supra*, 325 Md. at 733).

The underlying policy for the qualified privilege based on a common interest "is to promote free exchange of relevant information among those engaged in a common enterprise or activity and to permit them to make appropriate internal communications . . . without fear of suit . . . ."  *Gohari*, *supra*, 363 Md. at 58 (citations omitted).  Lindenmuth cannot meet his burden to show that McCreer's actions constitute

25

"opprobrious behavior that includes truly outrageous conduct," *Mixter*, *supra,* 215 Md. at 548 (citations omitted), where McCreer acted in furtherance of a protected common interest, and Lindenmuth provided no evidence of an abuse of that qualified privilege.

Accordingly, the circuit court did not err when it granted summary judgment in favor of McCreer on Lindenmuth's IIED claim.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**